(64 App. Div. 30.)

ROBERSON v. ROCHESTER FOLDING–BOX CO. et al.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

LIKENESSES—USE FOR ADVERTISING—RIGHT OF PRIVACY—PROPERTY RIGHTS—INJUNCTION—DAMAGES.

    Where defendants, without authority, publish and post in conspicuous places a large number of lithographic prints of plaintiff, with advertisements of their business thereon, thereby making her a subject of scoffs and jeers, and causing her humiliation and distress of mind, she may maintain an action to restrain such publication and use of her picture and for damages, since defendants thereby invade her right of privacy.

Appeal from special term, Monroe county.

Action by Abigail M. Roberson, an infant, by her guardian ad litem, against the Rochester Folding-Box Company and another. From an interlocutory judgment overruling defendants' demurrer to the complaint (65 N. Y. Supp. 1109), they appeal. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Elbridge L. Adams, for appellants.
Milton E. Gibbs, for respondent.

RUMSEY, J. The complaint, after the formal parts showing the right of the plaintiff to sue and the organization of the defendant

corporations, alleges that the Franklin Mills Company, one of the defendants, was engaged in a general milling business and in the manufacture and sale of flour; that before the commencement of the action, without the knowledge or consent of the plaintiff, the defendants, knowing that they had no right or authority so to do, had obtained, made, printed, sold, and circulated about 25,000 lithographic prints, photographs or likenesses of the plaintiff, made in a manner more particularly set out in the complaint; that upon the paper on which the likenesses were printed were the words above the portrait, in large, plain letters, "Flour of the Family," and below, in large capital letters, "Franklin Mills Flour," and in the lower right hand corner, in small capital letters, the words, "Rochester Folding-Box Company"; that upon the same paper are advertisements of the flour of the Franklin Mills Company; that these 25,000 likenesses of the plaintiff thus ornamented have been conspicuously posted and displayed in stores, warehouses, and saloons throughout the United States, and particularly in the vicinity in which the plaintiff resides; that they have been recognized by her friends and other people, and the result has been that she has been greatly humiliated by the scoffs and jeers of persons who have recognized her face upon these advertisements, and her good name has been attacked; that she has been made sick, and has suffered a severe nervous shock, was confined to her bed, and compelled to employ a physician, because of these facts. The plaintiff further alleges that the defendants still continue wrongfully making, using, and circulating these lithographs, and that by reason of these facts the plaintiff has suffered damage in the sum of $15,000. The relief demanded is that the defendants be enjoined from making or obtaining or using in any manner any likeness of the plaintiff in any form whatever, and further relief which it is not necessary to consider here, and for damages.

The demurrer is put upon the ground that the complaint does not state facts sufficient to constitute a cause of action. This demurrer admits, not only those facts which are expressly alleged in the complaint, but everything which can be implied by fair and reasonable intendment from the allegations of the pleading. Marie v. Garrison, 83 N. Y. 14–23. So the question is whether, upon all the facts stated, it can be said that the plaintiff has shown any right to equitable or other relief.

It may be said, in the first place, that the theory upon which this action is predicated is new, at least in instance, if not in principle, and that few precedents can be found to sustain the claim made by the plaintiff, if, indeed, it can be said that there are any authoritative cases establishing her right to recover in this action; but, while it may be true that the fact that no precedent can be found to sustain an action in any given case is cogent evidence that a principle does not exist upon which the right may be based, it is not the rule that the want of a precedent is a sufficient reason for turning the plaintiff out of court. It was well said many years ago:

"When a case not affected by any statute arises in any of our courts of justice, and the facts are established, the first question is whether there is

any clear and unequivocal principle of the common law which directly and immediately governs it and fixes the rights of the parties. If there be no such principle, the next question is whether there is any principle of the common law which, by analogy or parity of reasoning, ought to govern it. If neither of these sources furnishes a positive solution of the controversy, resort is next had (as in a case confessedly new) to the principles of natural justice, which constitute the basis of much of the common law, and, if these principles can be ascertained to apply in a full and determinate manner to all the circumstances, they are adopted, and decide the rights of the parties. If all these sources fail, the case is treated as remediless at the common law, and the only relief which remains is by some new legislation by statute, to operate upon future cases of the like nature. The very origin of equity in Rome and in England was that there was a wrong for which there was no remedy, or no adequate remedy, at law. 1 Story, Eq. Jur. §§ 49, 50. And we cannot but approve the language of Lord Cottenham in Wallworth v. Holt, 4 Mylne & C. 619: 'I think it is the duty of this court to adapt its practice and course of proceeding to the existing state of society, and not, by too strict an adherence to forms and rules established under different circumstances, to decline to administer justice and enforce rights for which there is no other remedy. If it were necessary to go much further than it is, in opposition to some highly-sanctioned opinions, in order to open the door of justice in this court to those who cannot obtain it elsewhere, I should not shrink from the responsibility of doing so.' Quoted in 1 Story, Eq. Jur. §. 671, note."

See Pierce v. Proprietors, 10 R. I. 227, 14 Am. Rep. 667.

This quotation accurately states, I think, the rules which should control the court in deciding any case as to which no authoritative precedent can be found, and, within these rules, there is a principle which is sufficient to warrant the court in giving the plaintiff relief in this action. If she is entitled to any relief whatever, it is, of course, not material here to examine the nature or extent of it.

It is an established principle of the common law that the person and property of every man is inviolate; that neither should be interfered with in any way, or to any, even the slightest, extent, without his consent. For any such unlawful interference, however slight, an action will lie, and the plaintiff is entitled to recover damages, although they may be but nominal in their amount. So far as personal rights are concerned, this rule is based upon the principle that every person has a complete and perfect right of indemnity from all interference with himself, or, as it is succinctly stated by Judge Cooley, he has the absolute right to be let alone. Cooley, Torts, p. 29. This right of immunity extends, not only to protection against physical injury, but against any action which threatens physical harm, although, as a matter of fact, no harm may have resulted from the action. It also applies to every act which in the slightest degree injures the reputation or the character of the person against whom it is directed. The theory evidently is that the right of protection to the person should be complete and perfect, and that no one should be allowed to do any act which interferes, or threatens to interfere, with the physical comfort or safety, or which attacks the reputation or character, of any person, and thereby affects injuriously his feelings, or subjects him to humiliation or disgrace.

I do not see why this principle, the object of which is to give to every person a complete immunity from the acts of others which sub-

ject him to unnecessary fear or danger, cannot be and should not be applied to such an act as is complained of here. The effect of that act, as is admitted by the demurrer, is to subject this young woman to humiliation, and to bring her good name into disrepute to such an extent that she has been made sick and compelled to take to her bed. Undoubtedly, if this had been the result of any act which the law regards as a libel, or which a jury could construe to be libelous in its character, or, because of a threat of physical violence, sufficient to constitute an assault, the plaintiff would have a right of action to recover the damages which naturally flowed from such an act. The cause of action in such a case arises from the fact that the defendant has violated the right of personal immunity,—the right not to be interfered with to his damage or danger or discomfort. I can see no distinction in principle between an act which, without threatening physical harm, injures the plaintiff's reputation by words spoken in respect of it, and the like act, which injures her feelings, and diminishes the respect with which she is held in the community, by saying or doing something in regard to her which tends to bring her into unnecessary and unwarrantable notice.

It has been said that the law takes no cognizance of injuries to the feelings of individuals, unless such injury is caused by an illegal act, and that it would not be safe to base any right of action upon the fact that a person was of a sensitive nature, and easily injured by being brought into public notice. I see no force in this contention. It is based solely upon the proposition that any one, without force or violence, is entitled to interfere with another, if it is to his pecuniary advantage to do so, without regard to the feelings of that other person. But the law has always regarded the fact that other things than pecuniary interests are to be protected, and I can see no reason why a person who, because it is for his advantage to do so, interferes with the desire of another person to be left alone, is to be any more regarded than the person interfered with who is desirous to have his feelings protected. I think, therefore, that the plaintiff is entitled to maintain the action upon the facts stated, upon the principle that her personal comfort has been interfered with without her consent, and to her injury. It cannot be said that only rights of property are to be protected in equity. In the case of Pollard v. Photographic Co., 40 Ch. Div. 345–354, it was said the right to grant an injunction did not depend upon the existence of property. While that decision was made by one judge at what in this state would be called a special term of the court, and is therefore of not very high authority, still I think the proposition there stated by Lord North was correct. That rule has undoubtedly been applied in many cases in this country. In several cases where the surviving relatives have brought actions to prevent the removal of a dead body which had been buried, or to assert the right to bury a corpse, although it has been conceded that no property right has been involved, yet courts of equity have acted by injunction to protect the right which arose merely from the respect and affection which the surviving relatives had towards the remains of the dead. Pierce v.

Proprietors, 10 R. I. 227, 14 Am. Rep. 667; Foley v. Phelps, 1 App. Div. 551, 37 N. Y. Supp. 471.

But, if it can be fairly contended that there must be a right of property to entitle plaintiff to maintain this action, still I think that the plaintiff's right to an injunction in this case may stand upon the right of property which every one has in his own body. The property right which is sufficient to induce the court to protect it by injunction may be quite intangible in its nature, and it is not necessary that it should be of any value. In the case of Woolsey v. Judd, 4 Duer, 379, 596, the general term of the superior court, which was composed at that time of exceedingly able judges, held that a court of equity would restrain the publication of private letters written by the plaintiff to the defendant, although those letters possessed no value whatever as literary compositions, and although it could not be said that the plaintiff was possessed of any tangible property with respect to them except the paper upon which they were written, or that he sustained any damage by the publication; but the interference of the court was justified for the reason that there was a right of property in the letters themselves, however intangible it might be, which was sufficient to permit the plaintiff to restrain the publication of them. The same rule was laid down in the case of Gee v. Pritchard, 2 Swanst. 402, in respect of letters of the same nature and quality. In the case of Woolsey v. Judd, supra, the superior court overruled the case of Hoyt v. Mackenzie, 3 Barb. Ch. 320, 49 Am. Dec. 178, and Wetmore v. Scovell, 3 Edw. Ch. 515, where the court held that the publication of private letters could only be restrained by the writer where they possessed some value as literary compositions, and it swept away the last vestige of the claim that a right of property necessary to sustain an injunction should be of substantial value, if it could be said that any such right existed. The same rule was laid down by Judge Story in Folsom v. Marsh, 2 Story, 100, Fed. Cas. No. 4,901, and it has been adopted in the case of Eyre v. Higbee, 35 Barb. 502. Although Mr. High, in his work on Injunctions (section 1012, note), claims that the case of Woolsey v. Judd and the other cases cited in that regard do not correctly state the law, yet I have not been able to agree with his decision in that respect. Not only do I think that they do state the law correctly, but they follow the current of authority in that regard, and the cases of Hoyt v. Mackenzie and Wetmore v. Scovell do not.

Neither is it necessary for the existence of a right of property that it should be presently profitable. If, under any circumstances and at any future time, the thing possessed may become profitable, undoubtedly the court will protect the right to its use and control by the owner. That one's features or limbs may be in themselves profitable to the possessor, especially if they are of noticeable beauty, or if for any other reason they possess especial value, cannot be denied, and so far they constitute a right of property which the court will protect. The peculiar formation which made the Siamese twins unique was undoubtedly exceedingly valuable to them, and the courts would without question have protected them against any

efforts made without their consent to photograph or by picture to produce a counterpart of that formation for the purposes of exhibition, and thereby reduce the profits they might receive from the exhibition of themselves. It is not unknown that one who is fortunate enough to be possessed of a beautiful hand has been able to sell a model of it to a sculptor to be reproduced, and there can be no doubt that in such case any attempt to obtain possession of the model of the hand without the consent of the owner would be restrained; or if any one had obtained such a model, and attempted to use it, without the consent of the owner, there is no doubt that the court would restrain that act at his suit. So, if the face of a woman, by reason of its beauty, is especially valuable as a model, from which the picture of a Madonna could be painted, there can be no doubt that any attempt by photograph to reproduce her face, so that it might be sold to a painter, thereby depriving the owner of the opportunity to obtain for herself the profit arising from it, would be a violation of her right of property, and would be restrained.

Can it be said that such a right will only be protected when the person has already made her features or form to be valuable to her? Is not the right as much to be protected when the profit is prospective, or where there is no intention or wish to make a profit, as when it has actually come to exist? I think there can be no doubt of it. Therefore, if it is necessary that there should be an actual right of property in one's features in order to entitle one to restrain an unwarranted reproduction of them, I think there is such a right, and that where a publication is made of them without the consent of the owner, to the injury of her feelings, there is such an invasion of the right that the court will restrain it.

But it is said that not only are there no precedents in favor of this right, but that the weight of authority is against it. In my judgment, that is not correct. I have examined with great care all the cases cited by the learned counsel for the appellants, who has collected all that there are in the books on that subject, and I find none of them which decides this case, or which decides any principle necessarily controlling it. In the leading case of Pollard v. Photographic Co., 40 Ch. Div. 345, the plaintiff had given sittings to the defendant company for her photograph portrait, so that copies might be made for her herself and upon her order. The defendant had seen fit to use the negative to make Christmas cards, which were put upon exhibition and sale, and the plaintiff brought the action to restrain the sale of the pictures and that use of the negative. The court granted an injunction, basing it upon the ground that there was an implied contract between the photographer and the sitter that the negative should not be used for any other purpose than to furnish photographs at the order of the sitter, and for that reason it held that the defendant should be restrained from making any other use of the negative. There is nothing in the case from which it can be inferred that any other question was examined or discussed, except from this question, which was asked by the court of the plaintiff's counsel during the argument, "Do you dispute that if the negative likeness were taken on

71 N.Y.S.—56

the sly, the person who took it might exhibit copies?" to which coun-
sel replied, "In that case there would be no consideration to support
a contract." But no such question was presented to the court, and
no decision in that regard was made; but I apprehend that if that pre-
cise question had been presented it would not have been difficult to
find some principle upon which the court might proceed to restrain
the sale of the copies. In the case of Gee v. Pritchard, 2 Swanst. 402,
and Abernethy v. Hutchinson, 3 Law J. Ch. 209, the question of what
is called the "right of privacy" was not in any way disputed, and the
cases were decided upon the existence of a right of property, although
Lord Eldon in each case held that, if it had been an original proposi-
tion, he would doubt whether any such right existed. The same may
be said of the case of Duke of Queensberry v. Shebbeare, 2 Eden, 329.
In Dockrell v. Dougall [1898] 78 Law T. 840, the plaintiff was a phy-
sician, and he brought an action against the owner of a patent med-
icine, who had stated in an advertisement of his medicine that the
plaintiff, a physician at St. John's Hospital, London, was prescrib-
ing his medicine as an habitual drink. The suit was dismissed upon
the ground that, although the unauthorized use of the plaintiff's name
was calculated to injure him in his profession, it was not such an in-
jury that could be restrained by injunction. The case was decided at
a special term of the chancery court in England by one judge. It does
not involve any principle which is presented in this case, nor do I
think that it is a proper statement of the law. In the case of Mac-
kenzie v. Mineral Springs Co. (Sup.) 18 N. Y. Supp. 240, upon almost
the same state of facts as is presented in the case last cited, an in-
junction was granted because of the injury to the plaintiff's reputa-
tion as a physician, and it seems to me that, although no opinion was
written in that case, the action of the court was in consonance with
well-established principles, whatever the action of the English courts.

In this country the question of the right to restrain the commission
of an act similar to the one in this case has been presented several
times. In the case of Schuyler v. Curtis, an unincorporated society of
which the defendants were members undertook to make two statues
for exhibition at the Columbian Exposition at Chicago. One was to
be an ideal statue, modeled after Mrs. Mary Hamilton Schuyler, the
aunt and stepmother of the plaintiff, who brought an action to re-
strain the erection of the statue upon the ground that the act was dis-
agreeable to the plaintiff, and because the making of the statue would
be obnoxious to Mrs. Schuyler if she were living, and upon the further
ground that it caused the plaintiff great distress. At special term the
injunction was granted (Sup.; 15 N. Y. Supp. 787); and the order of
the special term was affirmed by the general term of the First de-
partment (64 Hun, 594, 19 N. Y. Supp. 264). In each of these pro-
ceedings the violation of the right of privacy was relied upon as a
sufficient reason for the granting of the injunction. After the injunc-
tion had been granted the case came on for trial, and the plaintiff suc-
ceeded in making the injunction permanent. An appeal was taken to
the court of appeals, where it is reported in 147 N. Y. 434, 42 N. E.
22, 31 L. R. A. 286, 49 Am. St. Rep. 671. An examination of that

case shows, however, that, although the judgment was reversed, the reversal did not proceed upon a denial of the right of privacy, but upon the ground that the right of privacy which any person has during life dies with the person, and any right which survives is a right which pertains to the living only, and that no person can maintain an action to prevent the exhibition of a picture of a deceased relative, unless the injury caused by that display is personal to himself, and the action cannot be maintained simply because the exhibition would have been disagreeable to the person whose portrait is to be exhibited had he been living. Judge Gray dissented from the opinion of the court, holding not only that there was a right of privacy, but that it might be enforced by a relative of a deceased person. A careful examination of the opinion of the majority of the court, delivered by Judge Peckham, will show that there is no suggestion in it that such a right does not exist. On the contrary, Judge Peckham states more than once in the opinion that the decision is put squarely upon the ground that whatever right of privacy Mrs. Schuyler possessed had died with her, and that such a right could not be enforced by her relatives, and that is the sole ground upon which the decision of the court of appeals is based. Indeed, I think that it is easily inferable from the opinion that there is such a right, which may be enforced in a proper case. It cannot be said, therefore, I think, that the case of Schuyler v. Curtis is an authority for the proposition that the right of privacy does not exist, but is in fact to the contrary. In the case of Marks v. Jaffa, 6 Misc. Rep. 290, 26 N. Y. Supp. 908, the right of an individual to prevent the publication of his portrait in a newspaper was sustained by the special term in the county of New York, and an injunction was granted restraining the further publication of it. In Murray v. Engraving Co., 8 Misc. Rep. 36, 28 N. Y. Supp. 271, it was held simply that a parent could not maintain an action to restrain the unauthorized publication of a portrait of his child, which is the same proposition established by the court of appeals in Schuyler v. Curtis, supra. These are all the cases upon that subject reported in this state, and as a result of them it cannot be said that they overthrow the claim made by the plaintiff, even if they do not establish it.

In the case of Atkinson v. John E. Doherty & Co., 121 Mich. 372, 80 N. W. 285, the same question was presented as in the case of Schuyler v. Curtis, the action having been brought by Mrs. Atkinson to prevent the use of the name and portrait of her husband upon cigars manufactured by the defendant. The court held, as was decided by the court of appeals in Schuyler v. Curtis, that the widow could not bring an action to enforce this right of privacy. Whatever more was said than that was a dictum, which, however much entitled to respect because of the learning of the court, is not to be regarded as an authority.

In the case of Corliss v. E. W. Walker Co. (C. C.) 57 Fed. 434, and again 64 Fed. 280, 31 L. R. A. 283, the action was brought to restrain the publication of a picture of Mr. Corliss, the eminent inventor. In the first report of the case the injunction was denied as to the publication, and was granted as to the use of the plates from which the

engraving was printed, upon the ground that the picture was that of a public man, and that Mr. Corliss had consented in his lifetime to the publication of his picture in various books and newspapers, but that, the plates having been obtained upon a condition which had not been complied with, the defendant was not entitled to use them. A motion having been made to dissolve the injunction, the court, upon new facts, dissolved it, the opinion being written by Judge Colt, who, however, took occasion to say that he believed the law to be that a private individual had the right to be protected in the representation of his portrait in any form; that it is a property, as well as a personal, right; and that it belongs to the same class of rights which forbids the reproduction of a private manuscript or painting, or the publication of private letters, or of oral lectures delivered by a teacher to his class, or the revelation of the contents of a merchant's books by a clerk. It was held by Judge Colt that the distinction in the case of a picture or photograph lies between public and private characters. A private individual should be protected against the publication of any portrait of himself, but where an individual becomes a public character the case is different. I see no difficulty in the application of this rule, and it seems to me that it is one eminently proper to be observed. In the case of Chapman v. Telegraph Co., 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. Rep. 183, the sole question was the measure of damages for the breach of a contract in neglecting to send a message, and does not bear upon the case at bar. I have examined this case with great care, and, while the right claimed by the plaintiff is new, yet I think that the principle upon which that right depends is not novel, or one in respect of which there can be any doubt, but that, upon the application of well-established principles, the plaintiff has stated facts sufficient to constitute a cause of action.

The judgment appealed from should be affirmed, with costs, with leave to the defendants to withdraw their demurrer and answer upon payment of the costs in the court below and in this court. All concur.