[627 NYS2d 360]

In the Matter of NEW YORK CITY TRANSIT AUTHORITY et al., Petitioners, v STATE OF NEW YORK, EXECUTIVE DEPARTMENT, DIVISION OF HUMAN RIGHTS, et al., Respondents.

First Department, June 1, 1995

### APPEARANCES OF COUNSEL

*Evelyn Jonas* of counsel, Brooklyn *(Albert C. Cosenza,* attorney), for New York City Transit Authority, petitioner.

*Carl Rachlin* of counsel, New York City *(O'Donnell, Schwartz, Glanstein & Rosen,* attorneys), for Transport Workers Union of America, AFL/CIO, Local 100, petitioner.

*Mitchell A. Tyner,* Silver Springs, Maryland, and *Byers & Byers,* New York City *(Stafford H. Byers* on the brief, attorneys), for Mary Myers, respondent.

*Marc D. Stern, Steve Freeman* and *Dennis Rapps* for The American Jewish Congress and others, *amici curiae.*

### OPINION OF THE COURT

WALLACH, J. P.

This proceeding challenges an administrative determination that petitioner Transit Authority (TA) unlawfully discriminated against complainant Mary Myers by failing to accommodate her observance of the Sabbath. The matter was transferred to this Court for disposition in the first instance, under Executive Law § 298 and 22 NYCRR 202.57 (c).

Myers is a Seventh Day Adventist who abstains from work on the Sabbath, from sundown on Friday to sundown on Saturday. In June 1988 she was hired by the TA as a bus operator trainee. After completing six weeks of Monday-through-Friday training, she selected the East New York Depot as her assignment, and Wednesday and Thursday as her regular days off. Her first choice was Friday and Saturday, but those more popular off-days were already preempted by

employees more senior to her. When Myers presented a request for special consideration on religious grounds, petitioner Transport Workers Union (TWU) objected to any such accommodation on the ground that it would violate the seniority rules in the collective bargaining agreement.

On several occasions in September and October, the TA felt obliged to issue warning slips for Myers' failure to show up for work on Fridays and Saturdays. The TWU refused to waive the seniority rule in order to accommodate Myers' religious observance, and the TA declined to contest the issue with the Union in the interest of maintaining harmony in the workplace. Myers' employment was terminated on October 10, 1988.

A 219-page collective bargaining agreement, signed in April 1988, governed the labor relations between the TA and its more than 33,000 employees, as well as the TWU's responsibilities, during the 3½ months of Myers' employment. Embedded in that agreement is the protection of the earned seniority rights of all employees, and neither the TA nor the Union is empowered to dilute those contractual rights. Entitlements of senior service include the right to preferential "picks" to escape weekend duty assignments, as well as vacation and holiday choices. Since the TA operates its surface mass transit service on a seven-day, 24-hour basis, practice dictates that weekend service must be staffed almost entirely by those junior in service. The uncontradicted testimony at the hearing before respondent Division of Human Rights was that relief from weekend assignments was heavily preferred by TA employees, especially those with families, and that this "perk" was earned only by years of service.

Because the Division's order completely failed to take account of the foregoing realities prevailing at Myers' own workplace as well as at bus depots throughout the City, and utterly ignored the applicable provisions of the collective bargaining agreement, it was not based on substantial evidence. And in ignoring settled law, it was clearly arbitrary and must be annulled.

At the outset, we note the Division's jurisdiction over both the TA, as her employer (Executive Law § 296 [10]), and the TWU, as her labor organization (§ 296 [1] [c]). However, an employer need not make accommodation for a Sabbath observer where such would be "clearly prohibited * * * by nondiscriminatory provisions of its collective bargaining agree-

ment" *(Matter of Schweizer Aircraft Corp. v State Div. of Human Rights,* 48 NY2d 294, 299). In *Trans World Airlines v Hardison* (432 US 63), the Supreme Court held that a collective bargaining agreement which rendered seniority rights superior to accommodation for religious observance was nondiscriminatory. Indeed, the Court specifically held that where the employer and union had agreed to such a seniority system, the employer had no right to contravene those rules unilaterally.

In response to the concerns expressed in the concurring opinion suggesting that the law should require employers to make "reasonable efforts * * * to accommodate [religious] belief", we would only note that the TA, in the spirit of *Matter of Schweizer Aircraft Corp. v State Div. of Human Rights (supra),* did make a sincere effort at the outset to accommodate Myers' special needs. The Commissioner found that the TA initially took no action against Myers for missing work on Saturdays, and that the TA supervisor and the TWU representative had tried to work out a schedule which would allow her to be off during her Sabbath. But as she made the transition, in late summer, from trainee to fully qualified driver, the Union became less cooperative when it became clear to it that such accommodation at Myers' chosen duty location would conflict with the earned rights of employees more senior to her.

The courts are not free to downgrade the importance of union seniority rights. At the administrative hearing, one Union witness, Bill Bracken, who had been a bus operator for 16 years, testified as follows with respect to the significance of those rights to employees who have earned them through longevity of service:

"Seniority is really all that they have on the job, that they got nothing else, and without seniority you got nothing.

"We've got people that went through the mill and they're now just beginning to see the light. They are able to be home with their kids on the weekend and everybody, go through that period.

"See, unfortunately, my kids—I didn't even grow up with my kids. Unfortunately, you know, that's the nature of the job, you know."

Since the outcome of this case is wholly governed by prevailing law, the suggestion in the concurring opinion that the present balance of competing interests "invites intolerable

discriminatory consequences through rigid adherence to contractual provisions", and may "impose de facto discrimination", is at best gratuitous. Such language, while affording great deference to the Free Exercise Clause of the First Amendment, ignores the preceding prohibition of equal force that "Congress shall make no law respecting an establishment of religion".

Simply put, to find the proper balance between the Free Exercise Clause and the Establishment Clause may not always be easy (see, Sherbert v Verner, 374 US 398 [esp concurring opn by Stewart, J., at 416]). Nevertheless, it is important to recognize that true religious liberty is damaged, not only where a penalty is attached to religious observance, but also where the State acts to promote the welfare of one religious group ahead of another. The Constitution firmly condemns both courses with the same neutral hand.

In view of the foregoing, it is unnecessary to reach the other contentions of the parties.

Accordingly, upon the transfer order of Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered on or about April 21, 1994, the order of the State Division of Human Rights, dated March 31, 1993, which found that petitioners had discriminated against complainant Mary Myers by failing to accommodate her observance of the Sabbath and terminating her employment in violation of the Human Rights Law, and awarded her reinstatement, back pay and $50,000 as compensation for mental anguish, should be annulled, without costs.

RUBIN, J. (concurring). Complainant Mary Myers has been a practicing Seventh Day Adventist for 17 years and is the head Deaconess of the Linden congregation of Seventh Day Adventists. The tenets of her religion forbid engaging in any form of work on the Sabbath, which runs from sundown on Friday to sundown on Saturday. The penalty imposed by the church for failure to observe the Sabbath is disfellowship.

Petitioner Transit Authority services the mass transit needs of the City of New York and operates on a seven-day-a-week, 24-hour-a-day schedule. Petitioner Transport Workers Union is the collective bargaining agent for the 33,000 transportation workers employed by the New York City Transit Authority, and at all relevant times herein the rights and duties of those workers were governed by a collective bargaining agreement. The agreement contains a system, based strictly on seniority,

giving each employee the right to select (or "pick") work assignments, vacation periods, and hours and days off. The right to picks is central to the agreement, and the order of seniority is maintained at a particular Transit Authority facility by a "list man". To be eligible for Friday night and Saturday as scheduled time off, an employee would need as much as five years' seniority.

In this matter, the Transit Authority was advised by an entry on her application that Mary Myers is a Sabbath observer. While completing her training, she was not scheduled to work on weekends. Petitioners were able to accommodate Ms. Myers by scheduling her to be off work during the first weekend of her regular employment, but she was thereafter scheduled to work weekends. When she failed to report for work on Saturdays, her employment was terminated.

In the administrative determination under review, the Commissioner of Human Rights found that Ms. Myers "is deeply religious and takes great pride in her Seventh Day Adventist religion." Thus, the sincerity of her convictions was never a matter of serious dispute, having been found by the Commissioner to be "uncontroverted" in view of the entire record. The transcript of the hearing on which the Commissioner's determination is based contains testimony by the general superintendent of the bus depot to which Ms. Myers was assigned. He stated: "We canvassed all five depots in the Brooklyn division to see if we had any work that would accommodate her. There was no work available in any depot that would accommodate. That's the entire division." The determination also cites testimony from a Transit Authority labor relations manager that "the TA has a policy of trying to accommodate religious observers." The same witness stated, "The union's position has been that they are not willing to waive any operator's seniority rights in order to accommodate a Sabbath observer." Indeed, the Commissioner's determination notes that a union representative "stated that the Union made no efforts to accommodate Complainant".

It is difficult to believe that, in an organization of over 33,000 people, the accommodation of the occasional Sabbath observer will require another employee to forego the comfort of home and the company of offspring, as the majority seems to suggest. It is clear from the record that the Transport Workers Union insisted on rigid adherence to the terms of its collective bargaining agreement and ultimately frustrated any attempt by the employer to permit its employee to take

Saturdays off. Accommodation of the employee's religious beliefs by the Transit Authority was clearly precluded by the seniority system imposed "by nondiscriminatory provisions of its collective bargaining agreement" and, accordingly, this case falls squarely within the exemption stated in Matter of Schweizer Aircraft Corp. v State Div. of Human Rights (48 NY2d 294, 299). While this Court is constrained by the holding of that case to reverse the administrative determination, collective bargaining agreements should not be utilized to impose de facto discrimination.

My objection to the more or less automatic exemption of union seniority systems from civil rights statutes (Civil Rights Act of 1964 § 703, 42 USC § 2000e-2 [h]; Executive Law § 296 [10]) is that current State and Federal standards impose no obligation on the employer *and union* to accommodate an employee's religious beliefs, even where, as here, the employer is a quasi-public agency that derives a substantial portion of its operating revenue from public funding. It is not suggested that, by subjecting such employers and their employee unions to the same standard as all other employers, allowances must be made for every religious belief held by each individual employee; simply that the employer and union should be required to demonstrate that reasonable efforts were undertaken to accommodate the particular belief. Such accommodation is not equivalent to the promotion of one religious group's interest over that of another, and the majority cannot seriously contend that either of the civil rights statutes implicated in this matter offends the Establishment Clause.

By requiring no effort at accommodation on the part of the employee union, the law invites intolerable discriminatory consequences through rigid adherence to contractual provisions. As Justice Brennan stated in *Sherbert v Verner* (374 US 398, 404), the current state of the law requires the employee to choose whether to follow the precepts of her religion or to accept work: "Government imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [the employee] for her Saturday worship." The burden imposed on the employee abrogates basic First Amendment tenets. "Fundamental to the conception of religious liberty protected by the Religion Clauses is * * * that each sect is entitled to 'flourish according to the zeal of its adherents and the appeal of its dogma' " *(McDaniel v Paty,* 435 US 618, 640 [Brennan, J., concurring], quoting *Zorach v Clauson,* 343 US 306, 313). Freedom to practice one's

chosen creed "has classically been one of the highest values of our society" *(Braunfeld v Brown,* 366 US 599, 612). Such cherished First Amendment freedoms should not be so readily abandoned.

ASCH and NARDELLI, JJ., concur with WALLACH, J. P.; RUBIN and TOM, JJ., concur in a separate opinion by RUBIN, J.

Determination of respondent State Division of Human Rights, dated March 31, 1993 (transferred to this Court by order of the Supreme Court, New York County, entered April 21, 1994), annulled, without costs.