■ ERNO NUSSENZWEIG, Appellant, v PHILIP-LORCA DICORCIA et al., Respondents. [832 NYS2d 510]—

Order, Supreme Court, New York County (Judith J. Gische, J.), entered February 15, 2006, which, to the extent appealed from, as limited by the briefs, granted the motion and cross motion of defendants Philip-Lorca diCorcia and Pace/MacGill, Inc. for summary judgment dismissing the complaint, affirmed, without costs or disbursements.

We agree with Justice Tom's opinion, for the reasons stated therein, insofar as he concludes that the statute of limitations bars the action. Therefore, we do not reach the issue of whether defendants' use of plaintiff's photograph is entitled to First Amendment protection. So doing would contravene the well-established principle that a court should not decide a case on constitutional grounds where it can be resolved on nonconstitutional grounds; a constitutional issue should only be decided where it is unavoidable (*see e.g. Matter of Clara C. v William L.*, 96 NY2d 244, 250 [2001]; *Matter of Peters v New York City Hous. Auth.*, 307 NY 519, 527 [1954]).

An appellate court is "bound . . . by principles of judicial restraint not to decide questions unnecessary to the disposition of the appeal" (*People v Carvajal*, 6 NY3d 305, 316 [2005]). While judicial reluctance to decide a question that need not be reached may be overcome when the public interest requires a determination thereon (*see People ex rel. Unger v Kennedy*, 207 NY 533, 541 [1913]; *Matter of Bell v Waterfront Commn. of N.Y. Harbor*, 20 NY2d 54, 61 [1967]), the issue involved here is neither one that typically evades review and is likely to recur nor one that requires a prompt resolution to settle the law (*cf. Matter of Avella v Batt*, 33 AD3d 77 [2006]). If we were to review the constitutional issue on only a showing that the issue is likely to recur, the exception would swallow the rule.

Finally, we note that no argument can be made that we need reach the constitutional issue to have an alternative ground for the decision in the event that the case is heard by the Court of Appeals and that Court concludes that the statute of limitations in an action based on Civil Rights Law § 51 runs from the last publication of a photograph rather than, as we hold, from the date a photograph is first exhibited. First of all, no appeal as of right may be taken to the Court of Appeals. While an appeal as of right to the Court of Appeals lies "from an order of the appellate division which finally determines an action where there

is directly involved the construction of the constitution of the state or of the United States" (CPLR 5601 [b] [1]), "[t]he Court of Appeals interprets the direct-involvement requirement to mandate that the constitutional question be necessarily involved in the decision. Appeal as of right lies only when the record establishes that the construction of the state or federal constitution has been not only directly but necessarily involved in the decision of the case. If the decision was or may have been based upon some other ground, the appeal will not lie" (Weinstein-Korn-Miller, NY Civ Prac ¶ 5601.10 [internal quotation marks omitted]; *see also Matter of Haydorn v Carroll*, 225 NY 84 [1918]). In the event that leave to appeal to the Court of Appeals is granted and it decides the statute of limitations issue in plaintiff's favor, it can itself address the constitutional question, which has been fully preserved for review. Concur—Friedman, Sullivan and Catterson, JJ.

Tom, J.P., and Malone, J., concur in a separate memorandum by Tom, J.P., as follows: This controversy over a photograph of plaintiff Erno Nussenzweig taken by defendant Philip-Lorca diCorcia and exhibited and sold by defendant Pace/MacGill, Inc. (collectively, defendants) raises two issues: whether the use of an individual's likeness in a work of art is subject to an action under New York's privacy statute (Civil Rights Law §§ 50, 51) and whether the statute of limitations governing such an action runs from the date of the first unauthorized use, as this Court has held (*Costanza v Seinfeld*, 279 AD2d 255, 255-256 [2001]), or from the date of the most recent violation of the statute, as the Second Department has ruled (*Russo v Huntington Town House*, 184 AD2d 627, 628 [1992]). To the extent that the majority's disposition of this procedural issue fulfills our duty to render a final determination (CPLR 5522 [a]), it constitutes a less than definitive resolution of the controversy since an appeal is required to settle the split in authority between the Departments. Moreover, should the issue be resolved in favor of the Second Department's interpretation of the statute of limitations, the matter is almost certainly to be remanded for our consideration of any undetermined issues (*see Schiavone v City of New York*, 92 NY2d 308, 317 [1998]). Thus, reluctance to deal with the dispositive First Amendment issue raised by the parties serves to unnecessarily protract this litigation.

While we are cognizant of the majority's concern for judicial restraint, we are of the view that it should not be exercised at the expense of judicial economy. Although a court generally should not decide a constitutional issue unless it is unavoidable, it is recognized that this is a policy that "cannot be reduced to

any precise formula" (*Rescue Army v Municipal Court of Los Angeles,* 331 US 549, 573 [1947]), and its "applicability can be determined only by an exercise of judgment" (*id.* at 574). What is "unnecessary to the disposition of the appeal" (*People v Carvajal,* 6 NY3d 305, 316 [2005]) must be evaluated in the context of the particular controversy. Moreover, "it is settled that judicial reluctance to decide questions which need not be reached must give way when a case raises 'important constitutional issues' and the 'controversy is of a character which is likely to recur' " (*Matter of Bell v Waterfront Commn. of N.Y. Harbor,* 20 NY2d 54, 61 [1967], quoting *East Meadow Community Concerts Assn. v Board of Educ. of Union Free School Dist No. 3,* 18 NY2d 129, 135 [1966] [error to dismiss appeal on ground of mootness]; *see People v Dominick,* 68 Misc 2d 425, 427 [1971] [important First Amendment issues likely to recur]). Here, the alternative, nonconstitutional basis for disposition is uncertain, warranting consideration of the First Amendment issue decided by Supreme Court and submitted to us by the parties for decision.

We note also that the parties do not attack the constitutionality of the privacy statute; they merely debate which of their respective rights, each protected by the First Amendment, should be accorded precedence—freedom of religion or freedom of expression. Rights afforded to a plaintiff under the privacy statute inherently relate to the First Amendment right to freedom of expression. The privacy statute has always been interpreted within the context of the protection provided by the First Amendment because assessment of its permissible application requires consideration of the extent to which freedom of expression has been restrained (*e.g. Messenger v Gruner + Jahr Print. & Publ.,* 94 NY2d 436, 442 [2000]; *Arrington v New York Times Co.,* 55 NY2d 433, 440 [1982], *cert denied* 459 US 1146 [1983]; *Pagan v New York Herald Tribune,* 32 AD2d 341, 343 [1969], *affd* 26 NY2d 941 [1970]). Both in the interest of affording the parties more than a tenuous disposition and providing guidance on an issue which has thus far evaded appellate review,[1] we deem it appropriate to address the parties' constitutional arguments.

Noting that defendant photographer was at all times motivated by the desire to make a profit and grossed some $240,000 from the sale of a limited edition of photographic prints, plaintiff contends that a commercial use was made of his portrait. Irrespective of the profit motive, we conclude that the subject

---

**1.** State precedent on this subject is provided by a Civil Court decision (*Simeonov v Tiegs,* 159 Misc 2d 54 [1993]).

artwork constitutes a matter of general public interest entitled to First Amendment protection. We further conclude that the Establishment Clause is not implicated under the circumstances. Thus, even assuming the timely commencement of this action, the amended complaint fails to state a cause of action for which the law affords a remedy and was properly dismissed.

The material facts are undisputed. Between 1999 and 2001, defendant diCorcia took a series of candid photographs of passersby in Times Square, from which he chose 17 images to be included in a collection he entitled *Heads*. One of the selected photographs is a picture of plaintiff. A Hasidic Jew, plaintiff is depicted wearing the traditional attire of a black hat and coat, which merge into the dark background leaving his face and white beard dramatically illuminated. Plaintiff, like all of the other candid subjects, was completely unaware that his image had been captured.

Between September 6 and October 13, 2001, plaintiff's photograph was displayed in an exhibition of the *Heads* portraits promoted and held by Pace/MacGill, Inc., a gallery engaged in displaying and selling pictures and photographs. In connection with the exhibition, the gallery, which has represented diCorcia since 1993, distributed a catalog containing full-page reproductions of all the photographs in the *Heads* collection. The gallery sold, on behalf of diCorcia, an edition of 10 original 40-by-60-inch prints of plaintiff's portrait priced at between $20,000 and $30,000 each. The exhibition and sale of the *Heads* series received considerable coverage in the media, and a number of the photographs, including that of plaintiff, were reproduced in the local and national press as well as art publications.

The complaint, filed in June 2005 and amended in July 2005, seeks compensatory and exemplary damages for the unauthorized use of plaintiff's likeness under Civil Rights Law § 51, an accounting in aid of computing damages and a permanent injunction against the further use and sale of the photograph of plaintiff or reproductions thereof. The complaint names diCorcia and Pace/MacGill together with various John and Jane Does "being persons and entities who have used photographs, pictures, or reproductions of same, of plaintiff, for commercial purposes, advertising purposes, or trade purposes, throughout the State of New York and elsewhere."

Simultaneously with his answer, diCorcia moved for summary judgment dismissing the complaint (CPLR 3212), an application in which Pace/MacGill joined by way of cross motion based on the identity of issues of law to both defendants. The motion is predicated on the first and second affirmative defenses set forth

in the answer—that the complaint fails to state a cause of action (CPLR 3211 [a] [7]) and that its claims are barred by the one-year statute of limitations applicable to an action for violation of the statutory right to privacy (CPLR 215 [3]).

In a supporting affidavit, diCorcia, who holds a Master's degree in fine arts from Yale, notes that he has worked as "an artist and photographer for more than 25 years," and that his photographs have been exhibited at prominent museums around the world, including The Museum of Modern Art, the Whitney Museum of Art, the Museo Nacional Centro De Arta Reina Sofia in Madrid and Art Space Ginza in Tokyo. He states that a central focus of his work is " 'street photography'—*i.e.*, photographic images created on streets and in other public places, in New York and around the world." DiCorcia concedes that it is not his practice to obtain a model's release from any person whose image is intended to be used "in photographs to be exhibited at galleries and museums, to be sold in limited editions, and to be published in art books," although he always obtains a release from any person whose likeness is "to be used for advertising or promotional purposes." As to the *Heads* series, he states that prints of each photographic image "were produced in a limited edition of ten, plus three artists' proofs. No more original prints of those images will be produced."

Also submitted with diCorcia's motion is an affidavit from Peter Galassi, chief curator of photography of The Museum of Modern Art, who describes street photography as "one of photography's most important creative traditions." As to seeking permission to photograph a subject and to exhibit, publish and sell images captured by the photographer, he states, "It would be highly impractical—indeed, in the overwhelming majority of cases simply impossible—for the photographer to obtain such permission." He notes that public dissemination of candid photographic images began when "Alfred Stiglitz, whose work helped to initiate the artistic tradition of 'street photography,' and who was among the first to write about and encourage the genre, opened the world's first gallery for the exhibition and sale of photographic works of art in New York City in 1902." Galassi asserts that had the genre been burdened by the kind of restrictions now sought to be imposed by plaintiff, the public would have been deprived "of one of the most valuable traditions of our cultural inheritance, including many of the most admired works of artistic photography of the past century." He adds that The Museum of Modern Art has collected, published and exhibited diCorcia's work since 1985, including a one-person exhibit in 1993, describing him as "one of the most important and accomplished artists of his generation."

Plaintiff's opposition to the motion noted that diCorcia's avowed motive in embarking on the *Heads* project was the sale of the resulting collection of photographs for profit, which, plaintiff asserted, is an "important indicator" of the prohibited commercial use of his image (Civil Rights Law § 50). As to the timeliness of his action, plaintiff argued that given "the repeated reproduction, republication, offering for sale and sale of individual copies of plaintiff's photograph shown at art galleries and other places throughout the world," including its display for purposes of sale by Pace/MacGill as late as August 2005, "[t]his case falls squarely within . . . the continuous wrongs doctrine" (citing *Sporn v MCA Records*, 58 NY2d 482 [1983]). Noting that the conduct complained of in the complaint continued to the date of its filing in June 2005, plaintiff asserted that the statute of limitations does not constitute a bar to the action under the rule enunciated by the Court of Appeals in *Sporn*.

According to the motion court's decision, plaintiff also "argue[d] that the use of the photograph interferes with his constitutional right to practice his religion." It is plaintiff's position that insofar as the First Amendment may protect defendants' use of his picture, the courts are required to strike a balance with his right to privacy, as afforded by Civil Rights Law §§ 50 and 51 and by the First Amendment protection given to his right to follow the precepts of his religion. Plaintiff's accompanying affidavit explains that, as a member of the Klausenberg sect, "I do not believe in having my photograph taken for commercial and public purposes and feel that any use for these purposes is a violation of my religious beliefs namely the Second Commandment."[2] While plaintiff fails to further explain why the dissemination of his photograph by defendants offends the biblical proscription against the worship of graven images,[3] the sincerity of his belief has not been called into question. In any event, for the purpose of deciding whether a motion for summary dismissal raises any issue of fact, the evidence is construed in a light most favorable to the opponent of the motion, and we accept as true plaintiff's averments as to his faith (*Torres v Little Flower Children's Servs.*, 64 NY2d 119, 130 [1984]; *see* Siegel, NY Prac § 281, at 464 [4th ed]).

In granting the dismissal motion, Supreme Court held, inter

---

**2.** "Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth; Thou shalt not bow down thyself to them, nor serve them" (Exodus 20:4-5).

**3.** A "graven image" is defined as "an object of worship carved [usually] from wood" (Merriam-Webster's Collegiate Dictionary [10th ed]).

alia, that plaintiff's action is time-barred under CPLR 215 (3) (citing *Costanza v Seinfeld*, 279 AD2d 255, 255-256 [2001], *supra*), rejecting plaintiff's contention that continuous wrongs doctrine is applicable. Alternatively, the court held that the nonconsensual exhibition and sale of plaintiff's image by defendants within this state did not offend the statutory prohibition against use of his likeness "for advertising purposes, or for the purposes of trade" (Civil Rights Law § 50) so as to warrant monetary or injunctive relief (Civil Rights Law § 51).[4] The court further held that there is no merit to plaintiff's claim that the use of his photograph interferes with his constitutional right to practice his religion.

On appeal, plaintiff again argues that the courts must strike a balance between defendants' right to freedom of expression and his own right to freedom of religion. Plaintiff further contends that, consistent with the Second Department's decision *Russo v Huntington Town House* (184 AD2d 627 [1992], *supra*), the statute of limitations should be measured from the date of defendants' last wrongful use of his image.

While it may be problematic to determine whether a particular item should be considered a work of art, no such difficulty presents itself in this case. Quite apart from diCorcia's well-documented reputation as a renowned fine arts photographer and the uncontroverted evidence of the high price commanded by the subject prints, plaintiff concedes on appeal that his photograph is a work of art. Plaintiff nevertheless argues, as he did below, that defendants have made a commercial use of the photograph which is actionable under the privacy statute and that, in any event, the courts are required to strike a balance between defendants' right to freedom of expression and his right to practice his religion.

This Court has observed that New York's privacy statute "was mainly designed to operate in connection with the sale of goods and services," and that its application to works involving literary and artistic expression protected by the First Amendment "was remote from the Legislature's contemplation" (*University of Notre Dame Du Lac v Twentieth Century-Fox Film Corp.*, 22 AD2d 452, 456 [1965], *affd* 15 NY2d 940 *for reasons stated below* [1965] [motion picture and novel]; *see Arrington*, 55 NY2d at 439 [statute "drafted narrowly to encompass only the com-

---

4. The elements of a cause of action for violation of the statutory right to privacy are: (1) the use of a person's name, portrait, picture or voice (2) within the State of New York (3) for advertising purposes or the purposes of trade, (4) without written consent (Civil Rights Law § 51; *see Molina v Phoenix Sound*, 297 AD2d 595 [2002]).

mercial use of an individual's name or likeness and no more"]; *Davis v High Socy. Mag.*, 90 AD2d 374, 378 [1982], *appeal dismissed* 58 NY2d 1115 [1983] ["the competing tensions between claims of invasion of privacy and the constitutional rights of free speech and a free press compel a careful delineation of the statute"]). Courts that have considered the privacy statute as it applies to the use of a person's likeness as a component in a work of art have concluded that such use is protected by the First Amendment (*Altbach v Kulon*, 302 AD2d 655 [2003] ["caricature and parody"]; *see also Hoepker v Kruger*, 200 F Supp 2d 340, 349 [SD NY 2002] [collage]).

The sale of an individual's image in a limited edition of 10 photographic prints for an aggregate of some $240,000 is a far cry from the use of a person's likeness to adorn sacks of flour distributed by the thousands, the situation posed by *Roberson v Rochester Folding Box Co.* (171 NY 538 [1902]) that Civil Rights Law §§ 50 and 51 were enacted to redress (*see Arrington*, 55 NY2d at 439; *Davis*, 90 AD2d at 378). The publication of plaintiff's portrait in both the popular press and art media confirms that the image is "a matter of legitimate public interest to readers" so as to bring its use within the newsworthiness exception to the privacy statute (*Pagan*, 32 AD2d at 343; *see Stephano v News Group Publs.*, 64 NY2d 174, 184 [1984]). Thus, the inclusion of the photograph in a catalog sold in connection with an exhibition of the artist's work does not render its use commercial, as plaintiff suggests (*Hoepker*, 200 F Supp 2d at 350 [construing exhibit catalog as "pure speech"]). If the image is a matter of public interest, it is immaterial whether that interest is satisfied by viewing the original in a museum, art gallery or private dwelling or by perusing a reproduction in an art magazine or other publication.

That profit may be derived from the sale of art does not diminish the constitutional protection afforded. As noted in *Bery v City of New York* (97 F3d 689, 696 [2d Cir 1996], *cert denied* 520 US 1251 [1997]), "paintings, photographs, prints and sculptures . . . always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection." The public expression of those ideas and concepts is fully protected by the First Amendment, irrespective of whether an artist or speaker derives income from such expression (*see e.g. Riley v National Federation of Blind of N.C., Inc.*, 487 US 781, 801 [1988]; *Time, Inc. v Hill*, 385 US 374, 397 [1967]; *Hoepker* 200 F Supp 2d at 350).

Plaintiff further argues that the courts must strike a balance between defendants' right to freedom of expression and

plaintiff's right to freedom of religion. Additionally, because his privacy interest in preventing the unauthorized use of his image is an important tenet of his faith, plaintiff contends that Supreme Court's decision to withhold the protection afforded by the privacy statute amounts to state action infringing on his right to practice his religion.

Plaintiff misapprehends the scope of protection afforded to the practice of religion by the First Amendment, as extended to the states by the Fourteenth Amendment. The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" (US Const First Amend). This proscription applies only to governmental action that interferes with religious freedom (*e.g. Zelman v Simmons-Harris*, 536 US 639 [2002] [parents' private choice to use governmental tuition aid to send children to religious schools does not implicate the Establishment Clause]).[5] It has no application to the private, individual action at issue in this case.

There is no merit to plaintiff's contention that the issuance of an opinion by the Supreme Court according precedence to defendants' First Amendment rights to disseminate his image constitutes action by the State of New York which infringes upon his freedom to practice his religion. Judicial construction of the limits of the Establishment Clause is not tantamount to state action. *Shelley v Kraemer* (334 US 1 [1948]), the authority plaintiff relies upon, is inimical to his argument. The constitutional infringement identified in that case resulted from the judicial enforcement of contracts among neighbors that restricted the sale of their homes to whites (*id.* at 4-5). Thus, the power of the state was marshaled in aid of the enforcement of patently discriminatory private agreements that violated the 14th Amendment right to acquire, enjoy, own and dispose of property (*id.* at 19). While *Shelley* is not relevant to the scope of the Establishment Clause at issue on this appeal, it illustrates a pertinent point. Even though the members of the community are not prohibited, by agreement, from restricting their own freedom to dispose of their property, the courts are prohibited from lending the state's power to enforce any such restriction to the extent that it infringes on the constitutional rights of others. In this matter, it is plaintiff who, in the name of the exercise

---

5. The state may, consistent with the Establishment Clause, require the accommodation of a religious belief in order to "support[] and protect[]" religious diversity (*see Matter of New York City Tr. Auth. v State of N.Y., Exec. Dept., Div. of Human Rights*, 89 NY2d 79, 88 [1996], *modfg* 211 AD2d 220 [1995], citing Executive Law § 296 [10]).

of religion, attempts to enlist the assistance of the courts of this state to restrict defendants' freedom to disseminate a work of general public interest, and, to that end, the courts are forbidden to lend their assistance in contravention of the First Amendment protection conferred upon freedom of expression.

We further note that this Department adheres to the single publication rule (*Costanza*, 279 AD2d at 255-256) and thus the statute began to run when plaintiff's photograph was first exhibited on September 6, 2001 and expired one year later, some three years prior to the commencement of this action. To the extent that *Russo v Huntington Town House* (184 AD2d 627 [1992]) may be read to hold that the statute of limitations in a privacy action runs from the last publication of a photograph, we decline to follow it.

Accordingly, the order should be affirmed. [*See* 11 Misc 1051(A), 2006 NY Slip Op 50171(U) (2006).]