[7 NYS3d 96]

MARTHA G. FOSTER et al., Appellants, v ARNE SVENSON, Respondent.

First Department, April 9, 2015

**APPEARANCES OF COUNSEL**

*Menaker & Herrmann LLP*, New York City (*Richard G. Menaker, Erika S. Krystian* and *Wojciech Jackowski* of counsel), for appellants.

*Cowan, DeBaets, Abrahams & Sheppard LLP*, New York City (*Nancy E. Wolff, Matthew A. Kaplan* and *Scott J. Sholder* of counsel), for respondent.

**OPINION OF THE COURT**

RENWICK, J.

■ In this action, plaintiffs seek damages and injunctive relief for an alleged violation of the statutory right to privacy. Concerns over privacy and the loss thereof have plagued the public for over a hundred years.[1] Undoubtedly, such privacy concerns have intensified for obvious reasons.[2] New technologies can track thought, movement, and intimacies, and expose them to the general public, often in an instant. This public apprehension over new technologies invading one's privacy became a reality for plaintiffs and their neighbors when a photographer, using a high powered camera lens inside his own apartment, took photographs through the window into the interior of apartments in a neighboring building. The people who were being photographed had no idea this was happening. This case highlights the limitations of New York's statutory privacy tort as a means of redressing harm that may be caused by this type of technological home invasion and exposure of private life. We are constrained to find that the invasion of privacy of one's home that took place here is not actionable as a statutory tort of invasion of privacy pursuant to sections 50 and 51 of the Civil Rights Law, because defendant's use of the images in question constituted art work and, thus is not deemed "use for advertising or trade purposes," within the meaning of the statute.

Factual and Procedural Background

Defendant Arne Svenson is a critically acclaimed fine art photographer whose work has appeared in galleries and museums throughout the United States and Europe. Beginning in or about February 2012, after "inheriting" a telephoto camera lens from a "birder" friend, defendant embarked on a project photographing the people living in the building across from him. The neighboring building had a mostly glass facade, with large windows in each unit. Defendant photographed the building's residents surreptitiously, hiding himself in the shadows of his darkened apartment. Defendant asserts that he did so for reasons of artistic expression; he obscured his

---

**1.** *See* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv L Rev 193, 205 (1890).

**2.** *See e.g.* Harry Lewis, *How Facebook Spells the End of Privacy*, Boston Globe, June 14, 2008 at A11; Jeffrey Rosen, *The End of Forgetting*, NY Times Mag, July 25, 2010 at 32; Daniel J. Solove, *The End of Privacy?*, Sci Am, Sept. 2008 at 101; Richard Stengel, *The End of Privacy? Not Yet*, Time, Mar. 21, 2011 at 4.

subjects' faces, seeking to comment on the "anonymity" of urban life, where individuals only reveal what can be seen through their windows. After approximately one year of photography, defendant assembled a series of photographs called "The Neighbors," which he exhibited in galleries in Los Angeles and New York.

The exhibit's promotional materials on defendant's website stated that for his "subjects there is no question of privacy; they are performing behind a transparent scrim on a stage of their own creation with the curtain raised high." Defendant further stated that "The Neighbors" did not know they were being photographed, and he "carefully" shot "from the shadows" of his apartment "into theirs." Defendant apparently spent hours, in his apartment, waiting for his subjects to pass the window, sometimes yelling to himself, "Come to the window!" A reporter for The New Yorker magazine spent time with defendant while he was surreptitiously photographing his subjects. During this time, defendant took a photo of a "little girl, dancing in her tiara; half naked, she looked like a cherub. As she turned away, [defendant] took a photograph. I don't like it when little girls are running around without their tops,' he said, 'but this is a beautiful image."

During the New York exhibition of "The Neighbors," plaintiffs and other residents of the building learned, through media coverage of the exhibition, that they had been defendant's unwitting subjects. Plaintiffs, in particular, learned that their children, then aged three and one, appeared in the exhibition, in the photographs numbered six and twelve. Despite defendant's professed effort to obscure his subjects' identity, plaintiffs' children were identifiable in these photographs, one of which showed their son in his diaper and their daughter in a swimsuit; the other showed plaintiff mother holding her daughter. Upon viewing defendant's website, and discovering that the photographs of her children were being offered for sale, plaintiff mother called defendant to demand that he stop showing and selling the images of her children. Defendant agreed with respect to the photo with the children together (No. 6), but was noncommittal about the photo of plaintiff's daughter (No. 12). Plaintiffs then retained counsel, who sent letters to defendant and the Manhattan gallery where the photos were being shown, demanding that the photographs of plaintiffs' children be removed from the exhibition, the gallery's website, and defendant's website. Defendant and the gallery complied.

Plaintiffs' counsel sent a similar demand to an online art sales site called "Artsy." It, too, complied.

Despite this, one of the photographs of plaintiffs' daughter (No. 12) was shown on a New York City television broadcast discussing defendant and his show. Other showings followed, including one on NBC's "Today Show" on May 17, 2013, displaying photograph No. 12, showing plaintiffs' daughter's face. In addition, the address of the building was revealed in print and electronic media, including a Facebook page.

In May 2013, plaintiffs commenced this action seeking injunctive relief and damages pursuant to the statutory tort of invasion of privacy and the common-law tort of intentional infliction of emotional distress. Plaintiffs simultaneously moved for a preliminary injunction and a temporary restraining order. The TRO was granted on consent. Defendant then submitted his opposition to the motion for a preliminary injunction and cross-moved to dismiss the complaint, asserting the theory that because the photographs were art, they were protected by the First Amendment, and their publication, sale, and use could not be restrained.

In August 2013, Supreme Court denied plaintiffs' motion for a preliminary injunction; instead, it granted defendant's cross-motion to dismiss the entire complaint. In so doing, the court concluded that the photographs were protected by the First Amendment. The court found that the photographs conveyed defendant's "thoughts and ideas to the public" and "serve[d] more than just an advertising or trade purpose because they promote the enjoyment of art in the form of a displayed exhibition." (2013 NY Slip Op 31782[U], *5 [2013].) This Court, however, granted a preliminary appellate injunction pending the outcome of this appeal.

Discussion

As indicated, the denial of the preliminary injunction and the dismissal of the complaint were based on the same ground, namely that the alleged conduct constituting the privacy invasion are not actionable under the statutory tort of invasion of privacy (see Civil Rights Law §§ 50, 51).

New York State's privacy statute was borne out of judicial prompting from the Court of Appeals in Roberson v Rochester Folding Box Co. (171 NY 538 [1902]). In Roberson, the Court of Appeals declined to establish a common-law right to privacy where a flour company "obtained, made, printed, sold and

circulated about 25,000 lithographic prints, photographs and likenesses of plaintiff" without the plaintiff's consent (*id.* at 542). The "25,000 likenesses of the plaintiff . . . ha[d] been conspicuously posted and displayed in stores, warehouses, saloons and other public places." (*Id.*) The plaintiff sought an injunction preventing further use of the photographs as well as damages in the sum of $15,000 (*id.*). The Supreme Court, affirmed by the Appellate Division (64 App Div 30 [1901]), decided that the plaintiff had a "right . . . to be let alone" (32 Misc 344, 347-348 [1900]) a "so-called right of privacy" (171 NY at 544), which had been invaded by the widespread distribution of her image.

The Court of Appeals, however, reversed, reasoning that the adoption of such a right would result in "a vast amount of litigation [that would] border[ ] upon the absurd," because the assertions of a right to privacy, according to the court, would be limitless (*id.* at 545). The Court of Appeals ultimately found that "[t]he legislative body could very well . . . provide that no one should be permitted for his own selfish purpose to use the picture or the name of another for advertising purposes without his consent," as only the legislature can draw "arbitrary distinctions which no court should promulgate as a part of general jurisprudence" (*id.* at 545, 555).

Public outcry over the perceived unfairness of *Roberson* led to a rapid response by the New York State Legislature (*see Lerman v Flynt Distrib. Co., Inc.*, 745 F2d 123, 129 [2d Cir 1984], *cert denied* 471 US 1054 [1985]). Within a year of *Roberson*, New York enacted a statutory right to privacy (L 1903, ch 132). The statutorily-created right prohibits the use of a person's "name, portrait or picture" (Civil Rights Law § 50) or "name, portrait, picture or voice" (Civil Rights Law § 51) for advertising or trade purposes. Section 50 provides for criminal penalties for such prohibited uses, while section 51 gives the individual victim of such appropriation the right to obtain an injunction and bring a cause of action to obtain compensatory and exemplary damages (*id.*). Two phrases in the New York privacy statute describe the type of unauthorized use that is prohibited. The phrases are: (1) "for advertising purposes" and (2) "for the purposes of trade."

The legislature's use of the broad, unqualified terms for advertising and trade purposes, on their face, appear to support plaintiffs' contention that the statutory terms apply to all items which are bought and sold in commerce. Courts, however,

have refused to adopt a literal construction of these terms because the advertising and trade limitations of the privacy statute were drafted with the First Amendment in mind. As the Court of Appeals held in *Arrington v New York Times Co.* (55 NY2d 433, 440 [1982]), the terms trade and advertising concomitantly act as a narrowly-construed categorization crafted by the legislature to strike a balance between the concerns of private individuals and the First Amendment. Accordingly, the Court of Appeals has consistently held that the privacy statute should not be construed to apply to publications regarding newsworthy events and matters of public concern (*see Howell v New York Post Co.*, 81 NY2d 115, 123 [1993]; *Finger v Omni Publs. Intl.*, 77 NY2d 138, 141-142 [1990]). Thus, the prohibitions of sections 50 and 51 of the privacy statute are not applicable to newsworthy events and matters of public concern because such dissemination or publication is not deemed strictly for the purpose of advertising or trade within the meaning of the privacy statute (*see Arrington*, 55 NY2d 433, 440 [1982]).

The newsworthy and public concern exemption's primary focus is to protect the press's dissemination of ideas that have informational value. However, the exemption has been applied to many others forms of First Amendment speech, protecting literary and artistic expression from the reach of the statutory tort of invasion of privacy (*see e.g. University of Notre Dame Du Lac v Twentieth Century-Fox Film Corp.*, 22 AD2d 452, 456 [1st Dept 1965], *affd* 15 NY2d 940 [1965] [motion picture and novel]).

Similarly, the exemption has been applied in cases addressing written and nonwritten materials published or televised for the purpose of entertainment (*see e.g. Freihofer v Hearst Corp.*, 65 NY2d 135, 140-141 [1985]; *Stephano v News Group Publs.*, 64 NY2d 174, 184 [1984] [applying the exception to an article of consumer interest regarding events in the fashion industry]; *Gautier v Pro-Football, Inc.* (304 NY 354 [1952] [dismissing complaint of animal trainer who objected to televised broadcast of act performed during half-time at professional football game]). This is because there is a strong societal interest in facilitating access to information that enables people to discuss and understand contemporary issues (*see Time, Inc. v Hill*, 385 US 374, 388 [1967], citing *Thornhill v Alabama*, 310 US 88, 102 [1940]).

Since the newsworthy and public concern exemption has been applied to many types of artistic expressions, including

literature, movies and theater, it logically follows that it should also be applied equally to other modes of artistic expression. Indeed, works of art also convey ideas. Although the Court of Appeals has not been confronted with the issue of whether works of art fall outside the ambit of the privacy statute, other courts that have addressed the issue have consistently found that they do (*see e.g. Altbach v Kulon*, 302 AD2d 655 [3d Dept 2003]; *Nussenzweig v DiCorcia*, 11 Misc 3d 1051[A], 2006 NY Slip Op 50171[U] [Sup Ct, NY County 2006], *affd* 38 AD3d 339 [1st Dept 2007], *affd* 9 NY3d 184 [2007]; *Hoepker v Kruger*, 200 F Supp 2d 340 [SD NY 2002]; *Simeonov v Tiegs*, 602 NYS2d 1014 [Civ Ct, NY County 1993]).

For instance, in *Altbach v Kulon*, the Third Department held that an artist's publication of a town justice's photograph, along with a painting of the justice that caricatured him by portraying him as a devil with a horn and a tail, was constitutionally protected as a work of art (302 AD2d at 657-658). In *Altbach*, the defendant distributed flyers with the caricature and a photo of the justice to promote the opening of his art gallery (*id.* at 655). Preliminarily, the Court found that the

> "similarity of poses between the photograph and the painting, together with the content of the advertising copy identifying plaintiff as an experienced attorney, attest[ed] to the accuracy of [the] defendant's portrayal of [the] plaintiff's face and posture, while emphasizing that the painting is a caricature and parody of the public image" (*id.* at 658).

Nevertheless, the Court found that the photograph's use can readily be viewed as ancillary to a protected artistic expression because it "prove[s] [the] worth and illustrate[s] [the] content" of the painting exhibited at defendant's gallery (*id.*).

Similarly, in *Hoepker v Kruger*, the federal district court for the Southern District of New York gave First Amendment protection to a collage photograph displayed in the Museum of Contemporary Art, in Los Angeles (200 F Supp 2d 340 [2002]). The defendant Kruger, a collage artist known for her feminist position on issues of beauty, femininity, and power, copied an image, "Charlotte As Seen By Thomas," created by plaintiff, Thomas Hoepker (*id.*). She cropped and enlarged the image and superimposed three red blocks containing the words, "It's a small world but not if you have to clean it" (*id.* at 342). Kruger's creation was printed and sold in many forms (e.g.,

postcards and magnets) in the museum's gift shop. It was also published in a catalog of Kruger's works (*id.*). The court held that the creation itself "should be shielded from [the plaintiff's] right of privacy claim by the First Amendment. [It] is pure First Amendment speech in the form of artistic expression . . . and deserves full protection" (*id.* at 350).

It is also worth noting *Nussenzweig v diCorcia* (38 AD3d 339, 341 [1st Dept 2007, Tom, J.P., concurring], *affd* 9 NY3d 184 [2007]), which involved the same issue presented here—whether a citizen of this state retains the right to preclude the use of his likeness where such likeness is displayed in an artistic form (*id.*). The defendant, diCorcia, a respected photographer with a history of shows in New York museums, photographed a series called "HEADS," which involved candid "street photography" of people walking by a Times Square location. The images were exhibited in a gallery for sale (*id.*). The plaintiff, Nussenzweig, was readily identifiable, and did not consent to diCorcia's use of the images (*id.*). Nussenzweig was an Orthodox Jew with deep religious beliefs against the use of his image (*id.*). The exhibit was open to the public and was advertised. The 10 photos of Nussenzweig sold for $20,000 to $30,000 each (*id.*).

The majority found it unnecessary to address the constitutional issue and dismissed the privacy tort action as time-barred because more than one year had passed since the first (rather than the last) publication of the photographs (38 AD3d 339).[3] However, a concurrence did reach the constitutional issue of whether the defendant's use of the plaintiff's photograph was entitled to First Amendment protection (*id.*). The concurrence opined that "the inclusion of the photograph in a catalog sold in connection with an exhibition of the artist's work d[id] not render its use commercial" pursuant to the privacy statute because "the public expression of those ideas and concepts [wa]s fully protected by the First Amendment" (*id.* at 347).

In this case, we are constrained to concur with the views expressed in *Altbach*, *Hoepker*, and *Nussenzweig*'s concurrence: works of art fall outside the prohibitions of the privacy statute under the newsworthy and public concerns exemption. As indicated, under this exemption, the press is given broad leeway. This is because the informational value of the ideas

---

**3.** The Court of Appeals affirmed, agreeing with this Court and resolving the issue in favor of the limitations period running from the first invasion or use (*Nussenzweig v diCorcia*, 9 NY3d 184 [2007]).

conveyed by the art work is seen as a matter of public interest. We recognize that the public, as a whole, has an equally strong interest in the dissemination of images, aesthetic values and symbols contained in the art work. In our view, artistic expression in the form of art work must therefore be given the same leeway extended to the press under the newsworthy and public concern exemption to the statutory tort of invasion of privacy.

To be sure, despite its breadth, the exception is not without limits. To give absolute protection to all expressive works would be to eliminate the statutory right of privacy. Accordingly, under New York law, the newsworthy and public concern exception does not apply where the newsworthy or public interest aspect of the images at issue is merely incidental to its commercial purpose. For instance, the newsworthy and public concern exemption does not apply where the unauthorized images appear in the media under the guise of news items, solely to promote sales; such advertisement in disguise is commercial use deserving no protection from the privacy statute (*see e.g. Beverley v Choices Women's Med. Ctr.*, 78 NY2d 745, 751-755 [1991] [nonmedia defendant who produced and distributed a calendar to promote its medical center that included a picture of plaintiff not entitled to protection of newsworthy and public concern exception based on theme of women's progress where calendar was clearly designed to advertise the medical center]; *cf. Stephano v News Group Publs.*, 64 NY2d 174, 185 [1984] [model for article on men's fashion not entitled to protection of Civil Rights Law § 51 where photo was also used in column containing information on where to buy new and unusual products]).

Similarly, when a court determines that there is no real relationship between the use of the plaintiff's name or picture and the article it is used to illustrate, the defendant cannot use the newsworthy and public concern exception as a defense. This is because, by definition, if a person's image has no real relationship to the work then its only purpose must be for the sale of the work (*compare Thompson v Close-Up, Inc.*, 277 App Div 848 [1st Dept 1950] [publication of photograph did not fall within exceptions to Civil Rights Law §§ 50 or 51 where plaintiffs had no connection to dope peddling, which was the subject of defendant's article], *with Murray v New York Mag. Co.*, 27 NY2d 406 [1971] [photograph of plaintiff dressed in Irish garb while watching St. Patrick's Day parade spotlighted a newsworthy event and bore a real relationship to article

about contemporary attitudes of Irish-Americans in New York City]; and *Finger v Omni Publs. Intl.*, 77 NY2d 138 [1990] [photograph of plaintiffs and their six children bore real relationship to article entitled, "Want a big family?" and fell within the newsworthy exception despite fact that family had no involvement with subject matter of article, caffeine-enhanced in vitro fertilization, where both title and photo involved theme of fertility]).

Applying the newsworthy and public concern exemption to the complaint herein, we conclude that the allegations do not sufficiently plead a cause of action under the statutory tort of invasion of privacy. As detailed above, plaintiffs essentially allege that defendant used their images in local and national media to promote "The Neighbors," an exhibition that included photographs of individuals taken under the same circumstances as those featuring plaintiffs. Plaintiffs further allege that the photographs were for sale at the exhibit and on a commercial website.

■Accepting, as we must, plaintiffs' allegations as true (*Nonnon v City of New York*, 9 NY3d 825 [2007]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), they do not sufficiently allege that defendant used the photographs in question for the purpose of advertising or for the purpose of trade within the meaning of the privacy statute. Defendant's used of the photos falls within the ambit of constitutionally protected conduct in the form of a work of art. While a plaintiff may be able to raise questions as to whether a particular item should be considered a work of art, no such question is presented here. Indeed, plaintiffs concede on appeal that defendant, a renowned fine arts photographer, assembled the photographs into an exhibit that was shown in a public forum, an art gallery. Since the images themselves constitute the work of art, and art work is protected by the First Amendment, any advertising undertaken in connection with the promotion of the art work was permitted. Thus, under any reasonable view of the allegations, it cannot be inferred that plaintiffs' images were used "for the purpose of advertising" or "for the purpose of trade" within the meaning of the privacy statute.

Contrary to plaintiffs' arguments, the fact that profit might have been derived from the sale of the art work does not diminish the constitutional protection afforded by the newsworthy and public concern exemption. *Stephano v News Group Publs.* (64 NY2d 174 [1984]) illustrates how the newsworthy and pub-

lic concern exemption precludes right of privacy violations when the publication is distributed for profit. Stephano, a professional model who posed for photos for an article on men's fashion, claimed that the defendant improperly used his picture for trade or advertising purposes without his consent when it published a picture of him modeling a "bomber jacket" in a magazine column containing information regarding new and unusual products and including the approximate price of the jacket, the name of the designer, and the names of three stores where the jacket might be purchased. The motion court granted summary judgment to the defendant, concluding that the article reported a newsworthy fashion event, and was not published for trade or advertising purposes. In agreeing that the plaintiff did not have a claim under the privacy statute, the Court of Appeals explained that "(i)t is the content of the article and not the defendant's motive . . . to increase circulation which determines whether it is a newsworthy item, as opposed to a trade usage, under the Civil Rights Law" (id. at 185).

Plaintiffs also argue that, merely because the use of a person's name, portrait, or picture is newsworthy or a matter of public concern, such as a legitimate work of art, it should not be exempt from classification as "advertising" or "trade" if it was obtained in an improper manner. Plaintiffs do not cite any authority directly on point for this proposition, and indeed there does not appear to be any. However, acknowledging that Civil Rights Law §§ 50 and 51 reflect a careful balance of a person's right to privacy against the public's right to a free flow of ideas, plaintiffs argue that defendant's work should not be entitled to First Amendment protection because of the manner or context in which it was formed or made. In essence, plaintiffs seem to be arguing that the manner in which the photographs were obtained constitutes the extreme and outrageous conduct contemplated by the tort of intentional infliction of emotional distress and serves to overcome the First Amendment protection contemplated by Civil Rights Law §§ 50 and 51.

The Court of Appeals has set a high bar for what constitutes outrageous behavior in this context. In Howell (81 NY2d 115 [1993]), the plaintiff was a patient at a private psychiatric facility who alleged that it was critical to her recovery that no one outside of her immediate family know about her commitment. A New York Post photographer trespassed onto the se-

cluded grounds of the facility for purposes of capturing images of Hedda Nussbaum, who had been prominently thrust into the public eye a year earlier when her boyfriend Joel Steinberg murdered her daughter (*id.* at 118). Using a telephoto lens, the photographer took pictures of Nussbaum, who happened at the time to be strolling the grounds of the facility with the plaintiff (*id.*). When the pictures were published in the newspaper, the plaintiff claimed, inter alia, that her statutory right to privacy had been violated and that defendants had intentionally inflicted emotional distress on her (*id.* at 119).

The Court of Appeals held that the newsworthy and public concerns exception applied to bar the privacy claim because the Nussbaum affair was a matter of public interest and the photographs were directly related to the story (*id.* at 124-125). It rejected the plaintiff's contention that her presence at the facility was not newsworthy, since it was the fact of Nussbaum's interaction with the plaintiff that demonstrated Nussbaum's path to recovery from the physical and emotional abuse she had suffered at the hands of Steinberg (*id.* at 125). Notably, in dismissing the plaintiff's claim for intentional infliction of emotional distress as being "an end run around a failed right to privacy claim," the Court observed that the "defendants acted within their legal right" (*id.*). The Court further stated:

> "Courts have recognized that newsgathering methods may be tortious (*see, e.g., Galella v Onassis*, 487 F2d 986, 995 [2d Cir (1973)]) and, to the extent that a journalist engages in such *atrocious, indecent and utterly despicable* conduct as to meet the rigorous requirements of an intentional infliction of emotional distress claim, recovery may be available. The conduct alleged here, however—a trespass onto Four Winds' grounds—does not remotely approach the required standard. That plaintiff was photographed outdoors and from a distance diminishes her claim even further" (81 NY2d at 126 [emphasis added]).

The quoted language did not directly apply to the privacy claim in *Howell*. However, it strongly suggests that expression will not lose entitlement to the newsworthy and public concerns exemption of Civil Rights Law §§ 50 and 51 unless the means by which a person's privacy was invaded was truly outrageous. Indeed, while one can argue that defendant's actions were more

offensive than those of the defendant in *Howell*, because the intrusion here was into plaintiffs' home, clearly an even more private space, they certainly do not rise to the level of "atrocious, indecent and utterly despicable" (*id.*). Further, the depiction of children, by itself, does not create special circumstances which should make a privacy claim more readily available (*see Finger*, 77 NY2d at 138). We note that defendant's conduct here, while clearly invasive, does not implicate the type of criminal conduct covered by Penal Law § 250.40 *et seq.*, prohibiting unlawful surveillance.

In short, by publishing plaintiffs' photos as a work of art without further action toward plaintiffs, defendant's conduct, however disturbing it may be, cannot properly, under the current state of the law, be deemed so "outrageous" that it went beyond decency and the protections of Civil Rights Law §§ 50 and 51. To be sure, by our holding here—finding no viable cause of action for violation of the statutory right to privacy under these facts—we do not, in any way, mean to give short shrift to plaintiffs' concerns. Undoubtedly, like plaintiffs, many people would be rightfully offended by the intrusive manner in which the photographs were taken in this case. However, such complaints are best addressed to the legislature—the body empowered to remedy such inequities (*see Black v Allstate Ins. Co.*, 274 AD2d 346 [1st Dept 2000]; *Yankelevitz v Royal Globe Ins. Co.*, 88 AD2d 934 [2d Dept 1982], *affd* 59 NY2d 928 [1983]). Needless to say, as illustrated by the troubling facts here, in these times of heightened threats to privacy posed by new and ever more invasive technologies, we call upon the legislature to revisit this important issue, as we are constrained to apply the law as it exists.

Accordingly, the order of the Supreme Court, New York County (Eileen Rakower, J.), entered August 5, 2013, which denied plaintiffs' motion for a preliminary injunction, and granted defendant's cross motion to dismiss the complaint, should be affirmed, without costs.

MAZZARELLI, J.P., ANDRIAS, RICHTER and FEINMAN, JJ., concur.

Order, Supreme Court, New York County, entered August 5, 2013, affirmed, without costs.