COURT OF APPEALS
DECISION
DATED AND FILED

September 15, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**    **2021AP1377**
                   **2021AP1402**
                   **2021AP1421**

Cir. Ct. Nos. 2020CV1333
2020CV1589

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

No. **2021AP1377**
IN THE INTEREST OF E.K., A PERSON UNDER THE AGE OF 18:

E. K.,

   PLAINTIFF-APPELLANT,

B. E., A MINOR,

   PLAINTIFF,

   V.

SCOTT T. BLOOD,

   DEFENDANT,

ERIE INSURANCE EXCHANGE,

   DEFENDANT-RESPONDENT.

---

**NO. 2021AP1402**
**IN THE INTEREST OF B.E., A PERSON UNDER THE AGE OF 18:**

**E. K.,**

    **PLAINTIFF,**

**B. E.,**

    **PLAINTIFF-APPELLANT,**

  **V.**

**SCOTT T. BLOOD,**

    **DEFENDANT,**

**ERIE INSURANCE EXCHANGE,**

    **DEFENDANT-RESPONDENT.**

**NO. 2021AP1421**
**IN THE INTEREST OF E.K. AND B.E., PERSONS UNDER THE AGE OF 18:**

**E. K. AND B. E.,**

    **PLAINTIFFS,**

  **V.**

**SCOTT T. BLOOD,**

    **DEFENDANT-APPELLANT,**

**ERIE INSURANCE EXCHANGE,**

    **DEFENDANT-RESPONDENT.**

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed and cause remanded for further proceedings*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

¶1 FITZPATRICK, J. E.K. and B.E., a person to whom the parties to these consolidated appeals refer as E.K.'s "girlfriend," are both minors. Each minor (collectively, "the plaintiffs") sued Scott Blood—the fiancé of E.K.'s mother—in the Dane County Circuit Court for invasion of privacy and negligent invasion of privacy, among other claims, after learning that Blood placed a video camera in E.K.'s bedroom and recorded E.K. and B.E. in various stages of undress and engaging in intimate acts.[1] Blood is insured through two policies issued by Erie Insurance Exchange ("Erie"). We refer to Blood's homeowner's policy as the "primary policy" and the other policy issued to Blood by Erie as the "umbrella policy." Each policy provides an initial grant of coverage for "invasion of privacy" claims. Blood tendered the defense of the plaintiffs' complaints to Erie, and the proceedings were bifurcated to address whether the plaintiffs' claims are covered by the Erie policies. Erie moved for summary judgment and declaratory judgment, arguing that provisions in the policies preclude coverage for the plaintiffs' claims through what we refer to as an "intentional acts" exclusion and a "willful violation of a law" exclusion. The plaintiffs filed their own motions for

---

[1] The circuit court sealed the record for this case to ensure the confidentiality of the minor plaintiffs. Consistent with the parties' briefing, and pursuant to WIS. STAT. §§ 801.21 and 809.19(1)(g) (2019-20), we refer to the plaintiffs and E.K.'s mother by their initials, rather than by name. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

declaratory judgment arguing that the Erie policies are illusory and must be reformed to provide coverage for invasion of privacy because the exclusions on which Erie relies would preclude such coverage in every possible circumstance. In the alternative, B.E. argued that her negligent invasion of privacy claim is not precluded by those exclusions because that claim does not allege intentional conduct.

¶2      The circuit court granted Erie's motion regarding both policies and concluded that Erie has no duty to defend or indemnify Blood in this matter.  The court also denied the plaintiffs' motions.  E.K., B.E., and Blood each appeal the circuit court's order.[2]

¶3      We affirm the order of the circuit court because, based on the undisputed facts, Erie is entitled to judgment as a matter of law.  More particularly, we conclude that neither the intentional acts exclusions nor the willful violation of a law exclusion render illusory either the primary policy or the umbrella policy because there are circumstances in which an actionable invasion of privacy claim will not trigger either exclusion.  We also conclude that the intentional acts exclusions in the primary policy and umbrella policy preclude coverage for the plaintiffs' claims because there is no dispute that Blood intended to place the camera in E.K.'s bedroom, used it for recording events there, and viewed those recordings, and that harm and injury to the plaintiffs was substantially certain to follow.

---

[2] These appeals were consolidated for briefing and disposition by an August 20, 2021 order pursuant to WIS. STAT. RULE 809.10(3).

## BACKGROUND

¶4     There is no dispute as to the following material facts.

¶5     E.K., a minor, lived at a residence in Dane County, Wisconsin with his mother, C.K., and C.K.'s fiancé, Blood.  In 2019, Blood installed a video camera in E.K.'s bedroom.  Blood admitted to law enforcement, and does not dispute for purposes of this appeal, that he installed the camera to monitor E.K.'s behavior, including E.K.'s sexual activity with B.E., E.K.'s girlfriend, who is also a minor.  Over the course of a five-month period—and without the knowledge or consent of E.K. or B.E.—Blood's camera recorded E.K. and B.E. when, at times, they were in various stages of undress and engaged in sexually intimate conduct.  Blood admitted to law enforcement, and admitted in answer to E.K.'s complaint, that he viewed some of the recordings.

¶6     Acting on a tip to law enforcement, officers searched Blood's home and discovered the hidden camera.  Blood was placed under arrest and was charged with sexual exploitation of a child contrary to WIS. STAT. § 948.05(1)(b), capturing representations depicting nudity contrary to WIS. STAT. § 942.09(2)(am)1., and invasion of privacy contrary to WIS. STAT. § 942.08(2)(a). The state court criminal charges were dismissed because Blood was charged in federal court.  Blood pleaded guilty to, and was convicted of, receipt of child pornography in violation of 18 USC §§ 2252(a)(2) and 2252(b)(1) and possession of child pornography in violation of 18 USC §§ 2252(a)(4) and 2252(b)(2).  The possession of child pornography conviction was based on Blood's possession of the recordings of E.K. and B.E.  Blood was sentenced to a term in federal prison.

5

¶7      After Blood's conviction, E.K. and B.E. each filed a civil complaint against Blood and Erie based on the above-mentioned acts of Blood. B.E.'s complaint states five causes of action:  invasion of privacy contrary to WIS. STAT. § 995.50(2)(am)1. and 4.[3] (including the allegation that Blood's "conduct was in intentional disregard of [B.E.'s] rights and was malicious"); negligent invasion of privacy contrary to § 995.50(2)(am)1.; intentional infliction of emotional distress (including the allegation that Blood's conduct was "intended to cause emotional distress to [B.E.]" for Blood's own sexual gratification); negligent infliction of emotional distress; and negligence. E.K.'s complaint states a cause of action for

---

[3] As applicable here, WIS. STAT. § 995.50(2)(am)1. and 4. state:

> In this section, "invasion of privacy" means any of the following:
>
> 1. Intrusion upon the privacy of another of a nature highly offensive to a reasonable person … in a place that a reasonable person would consider private, or in a manner which is actionable for trespass.
>
> ….
>
> 4. Conduct that is prohibited under s. 942.09, regardless of whether there has been a criminal action related to the conduct, and regardless of the outcome of the criminal action, if there has been a criminal action related to the conduct.

Sec. 995.50(2)(am)1., 4. WISCONSIN STAT. § 942.09(2)(am) provides in pertinent part:

> Except as provided in par. (dr), whoever does any of the following is guilty of a Class I felony:
>
> 1. Captures an intimate representation without the consent of the person depicted under circumstances in which he or she has a reasonable expectation of privacy, if the person knows or has reason to know that the person who is depicted does not consent to the capture of the intimate representation.

Sec. 942.09(2)(am)1.

invasion of privacy pursuant to § 995.50(2)(am)1. and 4., alleging that Blood's actions were done "maliciously" and "with an intentional disregard for the rights of" E.K. E.K.'s complaint also alleges that "[t]he facts underlying the [federal court] indictment [of Blood] are the same facts underlying this civil claim." The two cases were consolidated into one action in the circuit court.

¶8      At all pertinent times, Blood was a named insured in two insurance policies issued by Erie, the primary policy and the umbrella policy. Under the primary policy, Erie agreed to defend and indemnify Blood for "personal injury caused by an offense committed during the policy period." (Emphasis removed.) This policy defines "personal injury," in part, as "injury arising out of … invasion of privacy." Germane to this appeal, the primary policy contains two exclusions regarding personal injury. The first excludes coverage for "personal injury caused intentionally by or at the direction of, and substantially certain to follow from the act of, an insured person" (the intentional acts exclusion). The second excludes coverage for "[p]ersonal injury arising out of willful violation of a law or ordinance by anyone we [insure]" (the willful violation of a law exclusion). (Emphasis removed.) The umbrella policy provides coverage for "invasion of privacy" under its "personal injury" coverage and also contains an intentional acts exclusion. The intentional acts exclusion in the umbrella policy states: "We do not cover … personal injury … expected or intended by anyone we [insure]." Unlike the primary policy, the umbrella policy does not contain a willful violation of a law exclusion. Pertinent provisions of the Erie policies are reproduced in full later in this opinion.

¶9      Blood tendered defense of the plaintiffs' complaints to Erie. Erie reserved its rights and retained counsel to defend him on the merits. As requested

by Erie, the circuit court bifurcated proceedings regarding the insurance coverage issues from the underlying merits of the plaintiffs' claims. Erie then moved for summary judgment and declaratory judgment, arguing that neither the primary policy nor the umbrella policy "provide[s] insurance coverage" to Blood for any of the claims in the plaintiffs' complaints. Relevant to this appeal, Erie argued that the intentional acts and willful violation of a law exclusions preclude coverage for the plaintiffs' claims.

¶10 The plaintiffs each filed a motion for declaratory judgment arguing that Erie "provide[d] liability coverage" to Blood for the allegations in their complaints. The plaintiffs contended that the intentional acts exclusion and the willful violation of a law exclusion are not enforceable because the application of those exclusions renders "illusory" Blood's policies. Specifically, the plaintiffs argued that there is no circumstance in which the Erie policies provide invasion of privacy coverage because those exclusions always preclude coverage for "intentional torts" such as invasion of privacy. The plaintiffs argued that the policies must be reformed to provide coverage for their invasion of privacy claims. In addition, B.E. argued in the alternative that, even if the court determined that the policies are not illusory, those exclusions do not preclude coverage for her negligent invasion of privacy claim.

¶11 In a written decision, the circuit court concluded that Erie is not obligated to defend or indemnify Blood for the claims in the plaintiffs' complaints. B.E., E.K., and Blood each appeal the circuit court's order.

¶12 Additional material facts are provided in the following discussion.

**DISCUSSION**

¶13    On appeal, B.E., E.K., and Blood (collectively, "the appellants") argue that the circuit court erred in granting Erie's motion for summary judgment and declaratory judgment and denying the plaintiffs' motions for declaratory judgment.  We begin by setting forth governing principles regarding summary judgment and declaratory judgment, and our standards of review for determining whether an insurance policy provides coverage in these circumstances.

## I.  Summary Judgment, Declaratory Judgment, and Standards of Review.

¶14    As noted, the parties request summary judgment and declaratory judgment.  This court has recognized that "both declaratory judgments and summary judgments are proper procedural devices for resolving insurance disputes." ***Young v. West Bend Mut. Ins. Co.***, 2008 WI App 147, ¶6, 314 Wis. 2d 246, 758 N.W.2d 196.

¶15    We review de novo a circuit court's decision to grant summary judgment regarding the interpretation of an insurance policy, applying the same methodology as the circuit court. ***Westphal v. Farmers Ins. Exch.***, 2003 WI App 170, ¶9, 266 Wis. 2d 569, 669 N.W.2d 166.  On summary judgment, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2); *see* ***Bank of N.Y. Mellon v. Klomsten***, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364.  Because in this matter there is no genuine dispute of material fact, we must determine which party is entitled to judgment as a matter of law.  ***Town***

*of Grant v. Portage Cnty.*, 2017 WI App 69, ¶12, 378 Wis. 2d 289, 903 N.W.2d 152.

¶16    As for declaratory judgments, a decision to grant or deny declaratory relief can be within the discretion of the circuit court. *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. "However, when the exercise of such discretion turns upon a question of law, we review the question independently of the circuit court's determination." *Id.* Put another way, a circuit court's grant of declaratory judgment that turns upon the interpretation of an insurance contract presents a question of law, and our review is de novo. *Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶7, 269 Wis. 2d 204, 674 N.W.2d 665 (2003). This court has stated that, in this context, we "treat the circuit court's declaratory judgment as an award of summary judgment." *Young*, 314 Wis. 2d 246, ¶6.

¶17    This appeal requires us to determine whether Erie's insurance coverage to Blood for invasion of privacy is illusory. Whether an insurance contract's coverage is illusory is a question of law that we review de novo. *Gillund v. Meridian Mut. Ins. Co.*, 2010 WI App 4, ¶19, 323 Wis. 2d 1, 778 N.W.2d 662.

¶18    Determining whether Erie's policies provide coverage for the plaintiffs' invasion of privacy claims also requires us to interpret WIS. STAT. § 995.50. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words

or phrases are given their technical or special definitional meaning." ***Id.*** Statutory interpretation and the application of statutes to undisputed facts are questions of law that this court reviews de novo. ***Landis v. Physicians Ins. Co. of Wis., Inc.***, 2001 WI 86, ¶¶12-13, 245 Wis. 2d 1, 628 N.W.2d 893.

¶19 We first interpret the primary policy and then the umbrella policy.

## II. The Primary Policy Does Not Require Erie to Defend or Indemnify Blood.

¶20 The appellants argue that the intentional acts exclusion and the willful violation of a law exclusion in the primary policy are not enforceable, and the primary policy must be reformed to provide coverage because the application of those exclusions renders illusory the primary policy's invasion of privacy coverage. In the alternative, B.E. argues that, even if the primary policy coverage for invasion of privacy is not illusory and those exclusions are enforceable, the exclusions do not preclude coverage for her negligent invasion of privacy claim.[4] We address each argument in turn.

---

[4] On appeal, E.K. requests that, if we conclude that the Erie policies' coverage is not illusory, and that the two applicable exclusions preclude his invasion of privacy claim, we should allow him to amend his complaint on remand to add a negligent invasion of privacy claim similar to that pleaded by B.E. This request must be addressed to the circuit court in a motion after remand for the circuit court to exercise its discretion in deciding whether E.K. may amend his complaint after summary judgment has been granted. *See **Mach v. Allison***, 2003 WI App 11, ¶27, 259 Wis. 2d 686, 656 N.W.2d 766 (2002).

**A. The Primary Policy Coverage is Not Illusory.**

### 1. Governing Principles for Construction of Insurance Policies and Illusory Coverage.

¶21 "The same rules of construction that govern general contracts are applied to the language in insurance policies." *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857. We construe an insurance policy to give effect to the intent of the parties as expressed in the language of the policy. *Id.* To this end, "[p]olicy language is construed as it 'would be understood by a reasonable person in the position of the insured.'" *Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845 (quoting *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65).

¶22 Coverage is illusory if the "policy language defines coverage in a manner that coverage will never actually be triggered." *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶56, 369 Wis. 2d 547, 881 N.W.2d 309; *Gillund*, 323 Wis. 2d 1, ¶19 ("Coverage is illusory when an insured cannot foresee any circumstances under which he or she would collect under a particular policy provision."). "Where a policy's purported coverage is illusory, the policy may be reformed to meet an insured's reasonable expectations of coverage." *Marks*, 369 Wis. 2d 547, ¶56.

### 2. Requirements to Trigger the Primary Policy's Exclusions.

¶23 The appellants contend that the intentional acts exclusion and the willful violation of a law exclusion always preclude invasion of privacy coverage in the primary policy because, according to the appellants, invasion of privacy is

generally classified as an "intentional" tort, and invasion of privacy claims require "intent" as part of the proof of that cause of action. However, that argument does not take into account a complete interpretation of the policy because the appellants do not substantively address the requirements to trigger each of those exclusions under Wisconsin law or discuss how those requirements apply to an illusory coverage analysis.[5] An analysis of when those exclusions can apply under Wisconsin law is critical in determining whether the application of those exclusions will always preclude coverage for invasion of privacy in the primary policy. We now address those exclusions.

¶24 In determining whether an intentional acts exclusion precludes coverage for a particular claim, Wisconsin courts apply a two-part test. "In Wisconsin, an intentional-acts exclusion precludes insurance coverage only where the insured acts intentionally and intends some harm or injury to follow from the act." *Loveridge v. Chartier*, 161 Wis. 2d 150, 168, 468 N.W.2d 146 (1991). As our supreme court has stated: "An insured intends to injure or harm another if he 'intend[s] the consequences of his act, or believe[s] that they are substantially certain to follow.' In other words, intent may be actual (a subjective standard) or inferred by the nature of the insured's intentional act (an objective standard)." *Id.* (citations omitted); *see also* *Raby v. Moe*, 153 Wis. 2d 101, 111, 450 N.W.2d 452 (1990).[6] Accordingly, the intentional acts exclusion will render the primary

---

[5] We recognize that the appellants and Erie mention these concepts. But the appellants mention the concepts only in the context of the potential application of the intentional acts exclusion to B.E.'s negligent invasion of privacy claim. The appellants do not analyze those concepts in the context of whether the policies are illusory.

[6] The intentional acts exclusions in those cases were similar to the intentional acts exclusions in the two Erie policies in play in this appeal. *Loveridge v. Chartier*, 161 Wis. 2d 150, 166, 468 N.W.2d 146 (1991); *Raby v. Moe*, 153 Wis. 2d 101, 107, 450 N.W.2d 452 (1990).

policy's invasion of privacy coverage illusory only if every cause of action for invasion of privacy will satisfy both elements of the above-described test—*i.e.*, that every cause of action for invasion of privacy requires that the insured both committed an intentional act and had an intent (actual or inferred objectively) that some injury or harm would be substantially certain to follow.

¶25 As for the willful violation of a law exclusion, the parties do not identify—and our research does not reveal—any Wisconsin case law defining the requirements necessary to trigger such an exclusion in an insurance policy. As a result, we must analyze the language of this exclusion to determine its meaning.

¶26 To repeat, this exclusion states, in pertinent part: "We do not cover … Personal injury arising out of willful violation of a law or ordinance by anyone we [insure]." The term "willful" is not defined in either Erie policy. "When determining the ordinary meaning of words not defined in an insurance policy, it is appropriate to look to the definitions in a non-legal dictionary." *Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶40, 360 Wis. 2d 129, 857 N.W.2d 136. Dictionaries define the term as "done deliberately," *Willful*, MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/willful (Last accessed Sept. 1, 2022) or as "said or done on purpose; deliberate," *Willful*, AMERICAN HERITAGE DICTIONARY (5th ed. 2011). In a similar vein, Wisconsin courts have interpreted "willful" in statutory contexts as synonymous with "intentional." *See, e.g.*, *DOT v. Transportation Comm'n*, 111 Wis. 2d 80, 87, 330 N.W.2d 159 (1983); *Milwaukee Corrugating Co. v. Winters*, 197 Wis. 414, 420, 222 N.W. 251 (1928) ("The words 'willful' and 'willfully' … are frequently used in the sense of intentionally, or in other words as implying a

purpose or design, or proceeding from a conscious motion of the will as distinguished from accidentally or involuntarily." (quoted treatise omitted)).

¶27     Those definitions align with our supreme court's interpretation of the phrase "willful violation" in the context of judicial misconduct proceedings. Under WIS. STAT. § 757.81, "misconduct" is defined as including a "[w]illful violation of a rule of the code of judicial ethics." Sec. 757.81(4)(a). Our supreme court has stated that a violation is "willful" under this statute when "the judge's conduct was not the result of duress or coercion and … *the judge knew or should have known that the conduct was prohibited* by the Code of Judicial Ethics." ***Judicial Disciplinary Proceedings of Tessmer***, 219 Wis. 2d 708, ¶¶2, 45, 580 N.W.2d 307 (1998) (emphasis added).

¶28     In the exclusion, the word "willful" modifies the entire phrase "violation of a law or ordinance." Accordingly, based on the above-mentioned authorities, the exclusion requires more than a violation of a law or ordinance that happens to involve an intentional act. Rather, the exclusion requires that the insured acted intentionally or deliberately *and* the insured knew, or should reasonably have known, that such act violates a law or ordinance. Therefore, this exclusion will render illusory the primary policy's invasion of privacy coverage only if every cause of action for invasion of privacy satisfies both those requirements.

¶29     We next apply those principles to the cause of action of invasion of privacy under Wisconsin law.

### 3. Application to Cause of Action for Invasion of Privacy.

¶30     The cause of action for invasion of privacy was first recognized in Wisconsin when the legislature enacted WIS. STAT. § 995.50.[7] ***Zinda v. Louisiana Pac. Corp.***, 149 Wis. 2d 913, 928, 440 N.W.2d 548 (1989).   Four types of invasion of privacy are actionable in a civil suit in Wisconsin:

> 1. Intrusion upon the privacy of another of a nature highly offensive to a reasonable person … in a place that a reasonable person would consider private, or in a manner that is actionable for trespass.
>
> 2. The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.
>
> 3. Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed.  It is not an invasion of privacy to communicate any information available to the public as a matter of public record.
>
> 4. Conduct that is prohibited under s. 942.09, regardless of whether there has been a criminal action related to the conduct, and regardless of the outcome of the criminal action, if there has been a criminal action related to the conduct.

Sec. 995.50(2)(am)1.-4.

---

[7] This cause of action was initially codified under WIS. STAT. § 895.50, but was renumbered to WIS. STAT. § 995.50 pursuant to 2005 Wis. Act 155, § 51.  The four causes of action for invasion of privacy, discussed in more detail below, were renumbered to § 995.50(2)(am)1.-4., pursuant to 2019 Wis. Act 72, § 1.

¶31     We assume, without deciding, that acts prohibited by subpart 4. regarding "[c]onduct that is prohibited under [WIS. STAT. §] 942.09" (described in footnote 2, above) will always be excluded from coverage in the Erie primary policy because of the intentional acts exclusion and the willful violation of a law exclusion.  Instead, we focus on subparts 1.-3. quoted above.  In considering subparts 1.-3. of WIS. STAT. § 995.50(2)(am), we are mindful that the question is not whether Blood's acts alleged in the complaints are precluded from coverage based on these exclusions.  Instead, for coverage to be illusory, there must be no circumstance in which coverage could "actually be triggered."  *Marks*, 369 Wis. 2d 547, ¶56.

¶32     The appellants argue that the causes of action for invasion of privacy under WIS. STAT. § 995.50(2)(am) are always "intentional" in that each cause of action requires a "volitional" act and, according to the appellants, that necessarily means that Erie's invasion of privacy coverage is illusory.  As we now explain, we reject this contention because it is contradicted by the language of § 995.50(2)(am)1.-3. and the meaning of the pertinent exclusions.

¶33     Based on its explicit wording, a cause of action for invasion of privacy under WIS. STAT. § 995.50(2)(am)1. does not require a showing of intent. *See Kalal*, 271 Wis. 2d 633, ¶45 (we are to look to the language of the statute).  In fact, this court has analyzed the requisite mental state required under § 995.50(2)(am)1. and confirmed that the intent of the defendant is not part of the elements of that cause of action:

> The test [in current WIS. STAT. § 995.50(2)(am)1.] is an objective one:  whether a reasonable person would find the intrusion highly offensive.  There is no requirement that the actor have a particular mental state or intent.

17

> … [WISCONSIN STAT. §] 942.08(2)(b) through (d) [concerning criminal invasion of privacy] each require that the defendant have the "purpose of sexual arousal or gratification." On the other hand, the civil statute, [current WIS. STAT. § 995.50(2)(am)1.], does not require a defendant to act with a particular state of mind. The civil statute merely requires the plaintiff to demonstrate that the invasion of privacy is "highly offensive to a reasonable person."

*Gillund*, 323 Wis. 2d 1, ¶¶29, 30.

¶34 To summarize, *Gillund* concludes that a defendant need not act "with a particular mental state or intent" or "with a particular state of mind" for there to be a valid cause of action under WIS. STAT. § 995.50(2)(am)1. For at least the following reasons, and consistent with that conclusion in *Gillund*, Erie's primary policy coverage for invasion of privacy is not illusory based on the terms of either exclusion.

¶35 First, both relevant exclusions require an intentional or deliberate act for their application, yet WIS. STAT. § 995.50(2)(am)1. can be violated even when an insured does not intend the causal act. Second, § 995.50(2)(am)1. can be violated even when the insured does not intend injury or harm that is substantially certain to follow, and that is another reason that the intentional acts exclusion does not bar coverage for every violation of § 995.50(2)(am)1. Third, that statutory subpart can be violated even when the insured did not know, and should not have reasonably known, that his or her act violated a law or ordinance, and that is another reason that the willful violation of a law exclusion does not bar coverage for every violation of § 995.50(2)(am)1. Accordingly, a cause of action under § 995.50(2)(am)1. may be covered under the primary policy's invasion of privacy provision because the requirements to trigger the intentional acts exclusion or the

18

willful violation of a law exclusion need not be present in order to prove that cause of action.

¶36    Consideration of WIS. STAT. § 995.50(2)(am)2. and 3. yields the same result for at least the following reasons. Subpart 2. requires only that the defendant "use, for advertising purposes or for purposes of trade, … the name, portrait or picture of any living person, without having first obtained the written consent of the person." Sec. 995.50(2)(am)2. This court has summarized these elements:

> [O]n its face, [WIS. STAT. § 995.50(2)(am)2.] requires only proof of the following:
>
>    1. "use" ... of the name, portrait or picture of any living person;
>
>    2. "use" that is "for advertising purposes or for purposes of trade"; and
>
>    3. "use" without "written consent."

*Habush v. Cannon*, 2013 WI App 34, ¶9, 346 Wis. 2d 709, 828 N.W.2d 876.

¶37    Subpart 3. requires in relevant part that a defendant publicize "a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted … unreasonably … as to whether there was a legitimate public interest in the matter involved." WIS. STAT. § 995.50(2)(am)3. This court has summarized these elements as follows:

> In order to establish a cause of action for invasion of privacy under [WIS. STAT. § 995.50(2)(am)3.], a plaintiff must prove: (1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the defendant acted … unreasonably … as to

19

whether there was a legitimate public interest in the matter, or with actual knowledge that none existed.

*Pachowitz v. Ledoux*, 2003 WI App 120, ¶18, 265 Wis. 2d 631, 666 N.W.2d 88. One element of that subpart requires a mental state; that is, a defendant who acts "unreasonably" satisfies that element. The appellants make no viable argument that "unreasonable" acts, which sound in negligence, come within the ambit of Erie's intentional acts exclusion.

¶38 Summarizing, neither of these two causes of action requires that an insured intend injury or harm that is substantially certain to occur so as to trigger the intentional acts exclusion. Neither cause of action requires that an insured know, or should have known, that their acts were in violation of a law so as to trigger the willful violation of a law exclusion. Further, neither of those requirements in the two pertinent exclusions can reasonably be read into, or inferred from, these statutory subparts. *See Kalal*, 271 Wis. 2d 633, ¶45.

¶39 Therefore, because there is a circumstance in which coverage will "actually be triggered," *see Marks*, 369 Wis. 2d 547, ¶56, the primary policy's invasion of privacy coverage is not illusory.

### 4. Developing Common Law of Privacy.

¶40 As a separate argument, the appellants rely on WIS. STAT. § 995.50(3) which states: "The right of privacy recognized in this section shall be interpreted in accordance with the developing common law of privacy, including defenses of absolute and qualified privilege, with due regard for maintaining freedom of communication, privately and through the public media." Sec. 995.50(3). The appellants construe that statutory subpart broadly and refer us to authorities that, in the appellants' view, establish the "developing common law

20

of privacy." The appellants contend that these authorities support their argument that every possible actionable invasion of privacy claim under Wisconsin law would be barred by at least one of the two pertinent exclusions in Erie's primary policy. We reject appellants' arguments for the following reasons.

¶41     First, the appellants rely on the Restatement (Second) of Torts because two federal courts have interpreted WIS. STAT. § 995.50(3) as "support[ing] a reading [of WIS. STAT. § 995.50(2)(am)1.] in accordance with the general common law as reflected by the [Restatement]." *Bogie v. Rosenberg*, 705 F.3d 603, 610 (7th Cir. 2013) (quoting *Fischer v. Mt. Olive Lutheran Church*, 207 F. Supp. 2d 914, 928 (W.D. Wis. 2002)). We now address pertinent Restatement sections and explain why we reject this argument.

¶42     The Restatement recognizes four separate types of conduct that constitute invasion of privacy: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public. RESTATEMENT (SECOND) OF TORTS § 652(A) (AM. L. INST. 1977); *Zinda*, 149 Wis. 2d at 928-29 (1989). This court has stated that the cause of action delineated in WIS. STAT. § 995.50(2)(am)1. (a cause of action brought by both plaintiffs) "correlate[s] to a limited degree" with the first category identified in the Restatement, unreasonable intrusion upon the seclusion of another. *Hillman v. Columbia Cnty.*, 164 Wis. 2d 376, 391, 474 N.W.2d 913 (Ct. App. 1991).

¶43     The Restatement describes "intrusion upon the seclusion of another" as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his [or her] private affairs or concerns, is

21

subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." RESTATEMENT (SECOND) OF TORTS § 652(B). The appellants contend that the use of the term "intentionally" in this section of the Restatement indicates that intent is required to prove a cause of action for invasion of privacy under WIS. STAT. § 995.50(2)(am)1. From that premise and in light of the language of the primary policy's intentional acts exclusion and willful violation of a law exclusion, the appellants argue that Erie's coverage for invasion of privacy is illusory.

¶44 For several reasons, we conclude that § 652(B) of the Restatement does not apply in this particular circumstance. Most importantly, our legislature's generalized directive in WIS. STAT. § 995.50(3) that Wisconsin courts interpret the "right of privacy" in accordance with "the developing common law of privacy" cannot reasonably be interpreted as an invitation to add the word "intentionally," or to otherwise alter the text of § 995.50, to better align with the Restatement. Rather, reasonably interpreted, § 995.50(3) indicates that we should use the Restatement, and other authorities, only as aids in interpreting the words that the legislature has chosen to use in § 995.50. *See Kalal*, 271 Wis. 2d 633, ¶45. As this court has recognized, § 652(B) of the Restatement correlates "to a limited degree" with § 995.50(2)(am)1. *Hillman*, 164 Wis. 2d at 391. That limited correlation between § 995.50(2)(am)1. and §652(B) has not been interpreted by any Wisconsin authority. But whatever the precise range is of this limited correlation, it cannot reasonably extend to the point of requiring the addition of the word "intentionally" to that statutory subpart when the legislature did not do so. As a result, the language in the Restatement does not add the requisite mental state of intent to the cause of action for invasion of privacy under § 995.50(2)(am)1.

22

Therefore, § 652(B) of the Restatement does not support the appellants' contention that Erie's coverage for invasion of privacy is illusory.

¶45     Second, the appellants argue that *Gillund* is instructive, but that case does not include any statement that helps the appellants here.  In that case, while Gillund was visiting her aunt and uncle, her uncle hid video cameras and recorded Gillund in various stages of undress.  *Gillund*, 323 Wis. 2d 1, ¶¶2, 17.  Gillund argued, in part, that the invasion of privacy coverage in her uncle's insurance policy was illusory because that coverage applied only to an "occurrence" and the intentional nature of the invasion of privacy claim directly contradicted the policy's definition of an "occurrence" as an "accident."  *Id.*, ¶14.  This court, however, did not address that argument from Gillund.  Rather, this court assumed without deciding that the policy was illusory based on the definition of "occurrence" and concluded that coverage was precluded based on the exclusion for "injury caused by a violation of a penal law committed by an insured."  *Id.*, ¶¶22, 33.  Because this court merely assumed without deciding that the policy was illusory, *Gillund*'s illusory coverage discussion on that specific point has no effect on our conclusion that Blood's primary policy is not illusory.

¶46     Third, the appellants rely on *Fox v. Iowa Health System*, 399 F. Supp. 3d 780 (W.D. Wis. 2019).  More particularly, the appellants argue that this federal court opinion requires us to construe WIS. STAT. § 995.50(2)(am)1.-3. as an intentional tort.  In that case, Fox and other plaintiffs sued UnityPoint Health for invasion of privacy, among other claims, after hackers stole private health and personal information.  *Id.* at 787.  The federal court concluded that the cause of action for invasion of privacy under WIS. STAT. § 995.50(2)(am)3. requires an intentional disclosure of private information.  *Id.* at 796.  The federal court's

reasoning that § 995.50(2)(am)3. is an intentional tort was based on WIS. STAT. § 893.57—Wisconsin's statute of limitations for "intentional torts"—which states that "invasion of privacy" is governed by that statute of limitations. *Id.* We question this conclusion. Statutory titles are not part of the statute. *See* WIS. STAT. § 990.001(6). We have recognized that statutory titles "may be resorted to in order to resolve a doubt as to statutory meaning, [but] we will not resort to them in order to create a doubt where none would otherwise exist." *State v. Holcomb*, 2016 WI App 70, ¶14, 371 Wis. 2d 647, 886 N.W.2d 100.

¶47 More importantly, *Fox*'s analysis cannot be reconciled with a decision of this court. The torts of "libel [and] slander" (defamation) are also listed as causes of action that are governed by the statute of limitations in WIS. STAT. § 893.57. Nonetheless, this court has concluded that defamation may occur based on negligent acts. *Baumann v. Elliott*, 2005 WI App 186, ¶23, 286 Wis. 2d 667, 704 N.W.2d 361. If each cause of action listed in § 893.57 is an intentional tort, and only an intentional tort, we could not have reached that conclusion in *Baumann*.[8] Therefore, the *Fox* opinion does not affect our conclusion that the primary policy is not illusory.

¶48 Fourth, the appellants rely on *Bailer v. Erie Insurance Exchange*, 344 Md. 515, 687 A.2d 1375 (1997), as an indication of the developing common law of privacy. We now summarize that opinion and explain that we do not consider it instructive because its analysis is not grounded in the particulars of

---

[8] In addition, *Fox* is of limited or no value to our analysis because that opinion does not address the particular requirements necessary to trigger an intentional acts exclusion or a willful violation of a law exclusion in an insurance policy.

Wisconsin law that guide our analysis. The plaintiff, an au pair working for the Bailers, sued the Bailers for invasion of privacy after discovering that a camera in the bathroom had secretly recorded her using the shower. *Bailer*, 687 A.2d at 1376. The Bailers had an insurance policy with Erie that purported to cover invasion of privacy, but also contained an intentional acts exclusion. *Id.* The Bailers tendered their defense to Erie, but Erie refused to defend on the ground that the intentional acts exclusion precluded coverage for the plaintiff's invasion of privacy claim. *Id.*

¶49 The Maryland Court of Appeals determined that the Bailers' policy was illusory because the intentional acts exclusion "totally swallows the insuring provision." *Id.* at 1380. Of importance for our purposes, that court stated that it was addressing only the tort of "intrusion upon seclusion" under § 652(B) of the Restatement because Erie had not briefed whether other forms of invasion of privacy require intent or whether the Bailers' policy insured against other forms of invasion of privacy. *Id.* at 1381. The court also stated as part of its reasoning that it was addressing only an intrusion upon seclusion cause of action because the parties to the insurance contract would not have intended for the Bailers' policy to cover any other type of invasion of privacy. The court stated:

> To the reasonable person the promise to pay damages for liability for invasion of privacy, at the time of contracting and under the circumstances presented here, refers to an intrusion upon seclusion. In other words, in an excess policy designed for owners of at least one house and at least one automobile, the contracting parties would not contemplate that the term, "invasion of privacy," primarily relates to such relatively exotic and usually commercial-context torts as appropriation of another's name or likeness, unreasonable publicity, or false light publicity.

25

*Id.* at 1384.  Relying on § 652(B) of the Restatement, the ***Bailer*** court concluded that the intentional acts exclusion rendered illusory the Bailers' invasion of privacy coverage because "[i]ntrusion upon seclusion must always be intentional in order to be tortious."  ***Id.*** at 1381, 1384.

¶50    Turning to our analysis of Wisconsin law, the initial reason that ***Bailer*** is not persuasive is that it does not address the requisite mental state for all forms of invasion of privacy recognized under Wisconsin law.  Rather, ***Bailer*** analyzed solely the necessary intent for intrusion upon seclusion as set forth in § 652(B) of the Restatement.[9]  Confirming the point, the ***Bailer*** court explicitly acknowledged that it was expressing "no opinion" on other forms of invasion of privacy because Erie did not brief that court on those other forms of the tort and did not argue that its policy covered those other forms.  ***Id.*** at 1381.  Here, by contrast, Erie has argued that its policy covers all forms of invasion of privacy recognized under Wisconsin law.  Relatedly, we also do not agree with ***Bailer***'s conclusion that coverage for invasion of privacy in a homeowners insurance policy must refer exclusively to intrusion upon seclusion.  Under WIS. STAT. § 995.50(2)(am), the phrase "invasion of privacy" is defined as *any* of the causes of action for invasion of privacy set forth therein.  We cannot ignore the unambiguous language of the Erie policy and § 995.50(2)(am) simply because some forms of invasion of privacy are, according to the Maryland court at least,

---

[9] As discussed earlier, that cause of action recognized in §652(B) of the Restatement correlates "to a limited degree" with Wisconsin's version of that cause of action under WIS. STAT. § 995.50(2)(am)1., and that section of the Restatement's use of the term "intentionally" does not alter the language of § 995.50(2)(am)1. chosen by the legislature.

"relatively exotic" and "usually" appear in the commercial context. *See id.* at 1384.

¶51 Further, we do not agree with *Bailer*'s conclusion that an intrusion upon seclusion claim will always trigger an intentional acts exclusion. As noted, *Bailer* based its decision on the proposition that intrusion upon seclusion "must always be intentional in order to be tortious." *Id.* However, this proposition stems from the use of the term "intentionally" in § 652(B) of the Restatement and the notion that an invasion of privacy claim requires intentional conduct. *Id.* at 1380-81. As discussed above, Wisconsin's version of that cause of action under WIS. STAT. § 995.50(2)(am)1. does not include the word "intentionally."[10]

¶52 Fifth, the appellants point to *Walkowicz v. American Girl Brands, LLC*, 2021 WL 510729 (W.D. Wis. Feb. 11, 2021), as another example of the "developing common law of privacy" that supports their position. In that case, Walkowicz sued American Girl, in part, for invasion of privacy and negligence for the alleged use of her likeness on a doll. *Id.* at *1. The federal court rejected Walkowicz's invasion of privacy claim on the ground that the doll was not based on Walkowicz's portrait, picture, or name as required by WIS. STAT. § 995.50(2)(am)2. *Id.* at *5-*8. The court also rejected Walkowicz's negligence

---

[10] In support of her reliance on *Bailer v. Erie Insurance Exchange*, 344 Md. 515, 687 A.2d 1375 (1997), B.E. lists several case citations in her brief-in-chief. We conclude that those opinions do not support B.E.'s argument for at least the following reasons. Two of the opinions mention invasion of privacy claims but, according to B.E.'s summary of those opinions, neither discusses the question of whether an insurance policy was illusory. Moreover, B.E. gives no reason for us to conclude that those same two opinions discuss either an invasion of privacy claim with elements similar to WIS. STAT. § 995.50(2)(am)1. or insurance policies with exclusions similar to the Erie policy exclusions at issue in this appeal. The remaining opinions relied on by B.E. discuss, according to B.E., intentional torts and insurance policy provisions, but B.E. does not tie those cases to the necessary analysis under Wisconsin law.

claim on the ground that Wisconsin does not recognize a duty to avoid using another's name or likeness. *Id.* at \*8-\*9. Here, the appellants argue that *Walkowicz* indicates that the "developing common law of privacy" requires "more than mere negligence to be actionable." *Walkowicz* does not shed any light on the issues in this case. The federal court's discussion of § 995.50(2)(am)2. did not address the requisite intent for a claim under that subpart. Also, the court's discussion of negligence did not address § 995.50 or the requisite mental state of the defendant required in the various forms of invasion of privacy under that section. Therefore, *Walkowicz* has no bearing on whether Erie's coverage for invasion of privacy under § 995.50(2)(am)2.—or any of the other Wisconsin causes of action for invasion of privacy—is illusory.

¶53 Sixth, the appellants rely on New York case law interpreting the New York statute on which WIS. STAT. § 955.50(2)(am)2. was modeled. *See Habush*, 346 Wis. 2d 709, ¶22 n.6 ("Reliance on New York case law is particularly useful to our analysis because the Wisconsin legislature used New York's privacy statute as a model for [§ 995.50(2)(am)2.]"). More specifically, the appellants cite to *Foster v. Svenson*, 128 A.D.3d 150, 7 N.Y.S.3d 96 (2015), in which a New York appellate court held that there was no cause of action for invasion of privacy against an "artist" who took photographs of his neighbors through their windows. *Foster*, 128 A.D.3d at 152. The court's discussion focused on whether the photographs were for the purpose of "advertising" or "trade" under New York's invasion of privacy statute and whether the photographs were protected speech. *Id.* at 160. The appellants argue that *Foster* is instructive because the opinion "supports" the proposition "that mere negligence is not actionable conduct for this type of tort." However, *Foster* never uses the term "negligence." To the extent that *Foster* discusses intent, it is in the context

of intentional infliction of emotional distress. *Id.* at 161-62. Thus, *Foster* has no instructive value here.

¶54 In sum, there exists an actionable invasion of privacy claim under WIS. STAT. § 995.50(2)(am)1.-3. that does not trigger the intentional acts exclusion or willful violation of a law exclusion in the primary policy. As a result, those exclusions do not render illusory the invasion of privacy coverage.

### B. The Intentional Acts Exclusion Precludes Coverage for the Plaintiffs' Claims.

¶55 We now discuss whether the intentional acts exclusion in the primary policy precludes coverage for the plaintiffs' invasion of privacy claims.[11] As noted, B.E. has stated claims for invasion of privacy, negligent invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and a cause of action styled only as "negligence." E.K. has stated a claim for invasion of privacy. The circuit court concluded that Erie does not provide coverage for any of the plaintiffs' claims.

¶56 We focus, as do the parties, on the issue of coverage generally, rather than on the duty to defend, because Erie has provided an initial defense to Blood and moved to bifurcate the coverage issue from the merits of the plaintiffs' claims. *See Talley v. Mustafa*, 2018 WI 47, ¶24, 381 Wis. 2d 393, 911 N.W.2d 55

---

[11] Erie also argues that coverage for the plaintiffs' invasion of privacy claims is precluded by the willful violation of a law exclusion and, with respect to E.K.'s claim, by an exclusion that Erie describes as the "family" exclusion. Because our decision regarding the intentional acts exclusion is dispositive, we need not address the applicability of these other two exclusions. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

("Our focus is on coverage, not on the duty to defend, because [insurer] followed a judicially-preferred approach when it received [insured's] complaint: it provided an initial defense to its insured and filed a motion to bifurcate the coverage issue from the liability trial."). In determining whether an insurance policy provides coverage for a particular claim, Wisconsin courts follow a three-step test. *Id.*, ¶25. First, we compare the allegations in the complaint, as supplemented by the extrinsic evidence submitted, with the language of the policy to determine whether the policy provides an "initial grant of coverage." *Id.* Second, if the policy provides an initial grant of coverage for the stated claims, we then examine the policy's exclusions to determine whether any exclusion precludes coverage. *Id.* Finally, if an exclusion applies, we examine the policy to determine whether any exceptions to the applicable exclusion restore coverage. *Id.* "The insured has the initial burden to show coverage, while the insurer has the burden of proving any exception to coverage." *Estate of Ermenc by Ermenc v. American Fam. Mut. Ins. Co.*, 221 Wis. 2d 478, 481, 585 N.W.2d 679 (Ct. App. 1998). Here, Erie does not dispute that the primary policy provides an initial grant of coverage for plaintiffs' claims under the first step of this test. The appellants do not contend that there is an exception to any exclusion under the third step of this test. Rather, the parties focus solely on the second step: whether any exclusions preclude coverage for the plaintiffs' claims. *See Talley*, 381 Wis. 2d 393, ¶25.

¶57 To repeat, this exclusion states: "We do not cover under … Personal Injury Liability Coverage … personal injury caused intentionally by or at the direction of, and substantially certain to follow from the act of, an insured person." (Emphasis removed.) As explained above, intentional acts exclusions such as this

30

one will preclude coverage only if the following two-part test is satisfied.[12] First, the insured acted intentionally and, second, the insured intended to injure or harm another. *Loveridge*, 161 Wis. 2d at 168. An insured intends to injure or harm another if he or she "intend[s] the consequences of his [or her] act, or believe[s] that [those] are substantially certain to follow." *Id.* "[I]ntent may be actual (a subjective standard) or inferred by the nature of the insured's intentional act (an objective standard)." *Id.* (citations omitted). An intentional acts exclusion will preclude coverage "even if the harm that occurs is different in character or magnitude from that intended by the insured." *Id.* at 169.

¶58 A determination of whether an insured, when assessed from an objective standpoint, intended that harm or injury result from an intentional act is often a question of fact. *Ludwig v. Dulian*, 217 Wis. 2d 782, 788-89, 579 N.W.2d 795 (Ct. App. 1998) (citing *Loveridge*, 161 Wis. 2d at 151). "However, a court may infer that an insured intended to injure or harm as a matter of law (an objective standard) if the degree of certainty that the conduct will cause injury is sufficiently great to justify such inference." *Id.* at 789. As this court explained in *Ludwig*:

> There is no bright-line rule to determine when intent to injure should be inferred as a matter of law. Rather, each set of facts must be considered on a case-by-case basis; the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law.

*Id.* (citations omitted).

---

[12] The parties do not dispute that this two-part test applies to the intentional acts exclusion in the primary policy.

¶59    The parties dispute whether Blood's conduct was an intentional act under the first prong of the two-part test.  The appellants argue that the first prong is not satisfied because B.E.'s complaint alleges in part that Blood acted negligently.  However, as Erie correctly observes, we must focus on the specific factual allegations against Blood, not the plaintiffs' theories of liability.  *See* ***Talley***, 381 Wis. 2d 393, ¶20 ("[A] plaintiff cannot simply add the word 'negligence' to a complaint and expect that a supervision claim against an employer will create an accident out of the employee's intentional assault and battery.").

¶60    Blood has admitted that he placed the camera in E.K.'s bedroom in order to monitor E.K.'s intimate behavior with B.E., another minor, and Blood further admitted viewing some of the recordings.  Blood then pleaded guilty in federal court to a charge of possession of child pornography related to those recordings.  E.K.'s complaint alleges only intentional acts of Blood including an allegation that the facts underlying the federal court indictment of Blood "are the same facts underlying this civil claim."  B.E.'s complaint alleges that Blood's actions of placing the camera for purposes of recording were "malicious."  For purposes of resolving this insurance dispute, the allegations of fact in the plaintiffs' complaints and the undisputed record lead to one conclusion:  that Blood intentionally placed a camera in E.K.'s bedroom and intentionally caused it to record visual representations of the plaintiffs engaging in intimate acts and in

stages of undress that Blood later viewed. Therefore, Blood's conduct was an intentional act sufficient to satisfy the first prong of the test.[13]

¶61　The parties next dispute whether Blood intended to cause injury or harm. As noted, intent to harm may be based on the insured's subjective intent or inferred from an objective standpoint by the nature of the insured's conduct. *Ludwig*, 217 Wis. 2d at 788. The appellants argue that Blood did not subjectively intend to injure or harm because Blood stated to C.K. that he never meant to harm E.K. and never intended for E.K. or B.E. to learn of the recordings. According to the appellants, these statements from Blood create a question of fact that should be resolved by remanding this case for trial. However, Blood's statements of his subjective intent are not dispositive because intent to injure or harm may be inferred as a matter of law "even if the insured asserts, honestly or dishonestly, that he [or she] did not intend any harm." *See Loveridge*, 161 Wis. 2d at 168.

¶62　Erie argues that we can infer intent to injure or harm as a matter of law because harm was substantially certain to result from Blood's conduct. For the following reasons, we agree. It is manifest that placement of a camera in a person's bedroom is nearly certain to record that person in various stages of undress and is likely, in some circumstances, to record that person engaging in intimate acts with another. Indeed, Blood was aware of this likelihood because he stated that the point of installing the camera was to monitor E.K.'s sexual activity with B.E. This is recognized in B.E.'s complaint, which alleges that Blood's

---

[13] We emphasize that we need not, and do not, express any opinion on the merits of the plaintiffs' claims, including whether Blood's conduct violates any of the forms of invasion of privacy under WIS. STAT. § 995.50.

conduct was done for Blood's sexual gratification. As well, E.K.'s complaint alleges that Blood acted "with an intentional disregard for the rights of" E.K. Reasonable persons are aware that the surreptitious recording of a person's bedroom activity is substantially certain to cause harm by violating that person's reasonable expectations of privacy. *See Safeco Ins. Co. of Am. v. Dooms*, 2022 WL 3010695, *9 (W.D. Ark. July 29, 2022) (for the purposes of an intentional acts exclusion, inferring that a photographer who secretly recorded women changing in his studio intended to invade the victims' privacy and cause mental distress and anxiety).

¶63 The appellants suggest that there is not a substantial certainty that Blood's conduct would cause harm because Blood did not intend to distribute the recordings. According to the appellants, if Blood's camera had not been discovered, then E.K. and B.E. would not have suffered harm. The appellants' argument fails. As noted, the placement of a camera in a person's bedroom violates the person's reasonable expectations of privacy, and this harm occurs at the moment the camera starts recording. The pictures or video that the camera captures need not be distributed or made known to the victim in order for such harm to occur. It is certainly enough that, as happened here, Blood recorded the activity and viewed the videos.

¶64 Finally, the appellants argue that we may not infer intent as a matter of law because Erie relied only on the allegations of fact in the pleadings and failed to "submit evidentiary facts supporting its contentions." For this argument, the appellants rely on *Fifer v. Dix*, 2000 WI App 66, 234 Wis. 2d 117, 608 N.W.2d 740, which states:

> [w]hile it is the moving party's responsibility to initially establish a prima facie case for summary judgment, once it

34

> is established the party in opposition to the motion may not rest upon the mere allegations or denials of the pleadings, but must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial.

*Fifer*, 234 Wis. 2d 117, ¶15 (alteration in original). Here, Erie is not attempting to demonstrate that there is a genuine issue of material fact that requires a trial. Rather, Erie asserts that there is no issue of fact and argues that it is entitled to judgment as a matter of law. Moreover, Erie does not need further affidavits in light of the allegations in the complaints and the record, including Blood's admissions.

¶65 In sum, Blood's placement of a camera in E.K.'s bedroom was an intentional act and, as a matter of law, such conduct was substantially certain to cause harm or injury. Accordingly, coverage for the plaintiffs' complaints is precluded under the primary policy's intentional acts exclusion.

### III. The Umbrella Policy Does Not Require Erie to Defend or Indemnify Blood.

¶66 The appellants argue that the personal injury coverage in Blood's umbrella policy requires Erie to defend and indemnify Blood for the plaintiffs' claims. We disagree.

¶67 As with the primary policy, the umbrella policy defines "personal injury" as including "invasion of privacy." The umbrella policy also contains the following intentional acts exclusion: "We do not cover: … personal injury or property damage expected or intended by anyone we protect. We do cover reasonable acts committed to protect persons or property." Unlike the primary policy, the umbrella policy does not include a willful violation of a law exclusion.

35

¶68    The appellants do not argue that the different language in the umbrella policy's intentional acts exclusion alters the analysis regarding whether the umbrella policy coverage for invasion of privacy is illusory. Thus, to the extent that the appellants argue that the umbrella policy is illusory because of the intentional acts exclusion, we reject that argument for the same reasons we reject that argument with respect to the primary policy.

¶69    Nonetheless, the appellants contend that the indemnification provision in the umbrella policy renders illusory the umbrella policy's coverage for invasion of privacy. The umbrella policy's indemnification provision states in pertinent part:

> We pay the ultimate net loss which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage resulting from an occurrence during this policy period. We will pay for only personal injury or property damage covered by this policy. This applies only to damages in excess of the underlying limit or Self-Insured Retention.

(Emphasis removed.) The umbrella policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage which is neither expected nor intended." The appellants contend that the umbrella policy's agreement to only cover an "occurrence" or "accident" is "inherently contrary" to its invasion of privacy coverage because each cause of action under WIS. STAT. § 995.50(2)(am) requires "volitional conduct." According to the appellants, this renders illusory the umbrella policy's invasion of privacy coverage. This argument fails for the same reasons discussed already regarding the primary policy's intentional acts exclusion; that is, not every cause of action for invasion of privacy requires an intentional or volitional act. As a result, the definition of "occurrence" in the

36

umbrella policy does not render illusory that policy's invasion of privacy coverage.

¶70 Further, coverage for the plaintiffs' claims is precluded by the intentional acts exclusion in the umbrella policy for the same reasons that coverage for those claims is precluded under the intentional acts exclusion in the primary policy. Although the umbrella policy's intentional acts exclusion uses somewhat different language than the exclusion in the primary policy, the appellants do not argue that this difference affects the applicability of that exclusion in the present case, and we discern no material difference.[14]

¶71 In sum, we conclude that the umbrella policy does not require Erie to defend or indemnify Blood for the plaintiffs' invasion of privacy claims.

**CONCLUSION**

¶72 For the foregoing reasons, the order of the circuit court is affirmed, and we remand this matter for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed and cause remanded for further proceedings.

Not recommended for publication in the official reports.

---

[14] In E.K.'s reply brief he asserts that the Erie primary policy is not in the record and that this renders the terms of Erie's umbrella policy ambiguous in regard to the family exclusion. However, as with the primary policy, we need not consider this exclusion because coverage is barred by the intentional acts exclusion. *Barrows*, 352 Wis. 2d 436, ¶9 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").